Harry J. Williby
P.O. Box 990755
Redding,CA 96099
**Phone:** (209) 244-3414
**E-mail:** harrywilliby@yahoo.com
**Attorney for:** In Pro Se

C V 18 5986
RMI

FILED #99 iFp

SEP 2 8 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
DISTRICT OF CALIFORNIA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| **Harry J. Williby,**<br>Plaintiff,<br><br>vs.<br><br>**Alphabet Corporation, dba,**<br>**Google, LLC., dba, Blogger, dba, Google,**<br>**dba, Google Adsense and, YouTube, LLC.**<br>**Viacom, dba, Paramount Pictures**<br>**Corporation**<br>**Apple Corps Ltd.,**<br>**Sony Corporation,**<br>**Hearst Corporation,**<br>**Walt Disney Company,**<br>**Fintage House, dba, Lasso Group,**<br>**Tele München Fernseh GmbH + Co.**<br>**Produktionsgesellschaft VOD,**<br>**Icon Film Distribution Pty Ltd (Australia**<br>**VOD), and Does/Roes 1-10,**<br><br>Defendants. | **Case No.** ~~3:18-cv-01903-JST~~<br><br>**ORIGINAL COMPLAINT**<br><br>**CONSPIRACY TO VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS; VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS; CONSPIRACY TO VIOLATE THE SHERMAN ANTI-TRUST ACT; VIOLATION OF THE SHERMAN ANTI-TRUST ACT (15 U.S.C. §§ 1–7); MISREPRESENTATION 17 U.S.C. § 512, Subsection (f); CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [18 U.S. Code § 1962 (d)]; RACKETEERING; [18 U.S. Code § 1962(c)]; WIRE/MAIL FRAUD [18 U.S. Code § 1341; § 1343]; BUS. & PROF. CODE § 17200, ET. SEQ.; FRAUD; AND DECLARATORY RELIEF**<br><br>**REQUEST FOR PUNITIVE DAMAGES**<br><br>**REQUEST FOR A TRO/PRELIMINARY INJUNCTION** (*Filed Herewith*)<br><br>**([TELEPHONIC] ORAL ARGUMENT REQUESTED; EXPEDITED CONSIDERATION REQUESTED)**<br><br>**DEMAND FOR JURY TRIAL** |

i

**INDEX**

|  |  | Page(s) |
|---|---|---|
| I. | NATURE OF THE ACTION | 1-4 |
| II. | JURISDICTION AND VENUE | 4-5 |
| III. | PARTIES | 5-11 |
| IV. | ASSOCIATED-IN-FACT INDIVIDUALS | 11-15 |
| V. | OTHER PARTICIPANT INDIVIDUALS | 7-15 |
| VI. | THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION | 15-17 |
| VII. | THE DIGITAL MILLENNIUM COPYRIGHT ACT | 17 |
| VIII. | THE SHERMAN ACT | 17-18 |
| IX. | FACTUAL ALLEGATIONS | 18-00 |
|  | A. The Conspiracy to Violate Plaintiff's First Amendment Rights | 18-19 |
|  | B. Plaintiff's YouTube Channels | 19-19 |
|  | (1). The Attorney Depot™ Branding, Global Marketing & Channel Genre | 19-20 |
|  | C. The Harry Williby YouTube Channel Branding, Global Marketing & Channel Genre | 20-22 |
|  | D. Conspiracy to Violate Plaintiff's First Amendment Rights Based Upon Plaintiff's Support for President Donald J. Trump | 22-24 |
| X. | THE DEFENDANTS' SCHEME TO DEFRAUD | 24-27 |
| XI. | THE ENTERPRISE | 27-28 |
| XII. | COMMON FACTUAL ALLEGATIONS | 28-41 |
| XIII. | THE PREDICATE ACTS | 41-42 |
| XIV. | THE PATTERN OF RACKETEERING ACTIVITY | 42-43 |
| XV. | OVERVIEW | 43-44 |
| XVI. | INTERSTATE COMMERCE | 44-44 |
| XVII. | RELEVANT MARKET AND DEFENDANTS' MARKET POWER | 44-45 |
| XVIII. | THE DEFENDANTS' ANTI-TRUST ACTIVITIES | 45-52 |
| XIX. | INVALIDITY OF ADSENSE PATENT | 52-53 |
| XX. | FIRST AMENDMENT CLAIM FOR RELIEF | 53-55 |
|  | COUNT I. CONSPIRACY TO VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS | 53-53 |
|  | COUNT II. VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS | 53-54 |
|  | PRAYER FOR RELIEF (COUNT I & COUNT II) | 54-55 |
| XXI. | LAW VIOLATIONS IN FURTHERANCE OF THE SCHEME TO DEFRAUD | 55-62 |
|  | COUNT III – VIOLATIONS TO SECTION 1962(c) OF RICO | 55-00 |
|  | A. THE ENTERPRISE | 55-56 |
|  | B. RACKETEERING PREDICATE ACTS | 56-57 |
|  | C. THE INJURY BY REASON OF THE VIOLATION OF SECTION 1962(c) | 57-57 |
|  | PRAYER FOR RELIEF (COUNT III) | 57-58 |
|  | COUNT IV – VIOLATIONS TO SECTION 1962(a) OF RICO | 58-59 |
|  | A. THE ENTERPRISE | 58-58 |
|  | B. THE RACKETEERING INCOME | 58-60 |
|  | C. THE INJURY BY REASON OF THE VIOLATION OF SECTION 1962(a) | 60-60 |
|  | PRAYER FOR RELIEF (COUNT IV) | 60-61 |
|  | COUNT V - VIOLATIONS TO SECTION 1962(d) OF RICO | 61-00 |
|  | A. THE ENTERPRISE | 61-00 |
|  | B. THE CONSPIRACY | 61-00 |

## INDEX (Cont.,)

| | Page(s) |
|---|---|
| C. THE INJURY BY REASON OF THE VIOLATION OF SECTION 1962(d) | 61-62 |
| PRAYER FOR RELIEF (COUNT V) | 62-62 |
| XXI. CLAIM FOR RELIEF UNDER THE SHERMAN ACT | 62-00 |
| COUNT VI: Declaratory Relief (Invalidity of Patent) | 62-63 |
| COUNT VII: Violation of Section 1 of Sherman Act – Restraint of Interstate Commerce | 63-64 |
| COUNT VIII: (Violation of Section 2 of the Sherman Act – Conspiracy to Monopolize, Attempted Monopolization, and Monopolization) | 64-66 |
| COUNT IX: (Violation of Subsections (f)(1) of 17 U.S.C. § 512 – Misrepresentation) | 66-66 |
| COUNT X: (Violation of California Business & Profession Code 17200, et. Seq. – Unfair/Unlawful Business Practices) | 66-68 |
| COUNT XI: FRAUD & DECEIT ("DOLO") IN THE FULFILLMENT OF CONTRACTUAL OBLIGATIONS | 68-69 |
| COUNT XII: CIVIL CONSPIRACY | 69-69 |
| COUNT XIII: PERMANENT INJUNCTION AND DECLARATORY JUDGMENT | 69-70 |
| XXII. JURY DEMAND | 70-70 |
| XXII. PRAYER FOR RELIEF (COUNTS I THROUGH XIII) | 70-71 |
| VERIFICATION | 71-71 |

1

**COMPLAINT**

The plaintiff, Harry J. Williby, moves the Court for entry of judgment in his favor against Alphabet Corporation, dba, Google, LLC., dba, Blogger, dba, Google Adsense and, YouTube, LLC.; Viacom, dba, Paramount Pictures Corporation; Apple Corps Ltd.; Sony Corporation; Hearst Corporation; Walt Disney Company; Fintage House, dba, Lasso Group; Tele München Fernseh GmbH + Co. Produktionsgesellschaft VOD; Icon Film Distribution Pty Ltd (Australia VOD); Does/Roes 1-10, and each of them, jointly and severally, and in support of such Complaint, respectfully avers as follows:

**I. NATURE OF THE ACTION**

1.     Plaintiff brings this civil action, in part, pursuant to the First Amendment (U.S. Const.,) [retaliating against Plaintiff for his exercise of constitutionally protected speech; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff]; 17 U.S.C. § 512, Subsection (f)(1); Title IX of the Organized Crime Control Act of 1970, otherwise known as Racketeer Influenced and Corrupt Organizations Act (henceforth "RICO"),18 U.S. Code §§ 1961 – 1966; 15 U.S.C. §§ 1–2; §§ 15 and 26; and pendent state law claims, to obtain injunctive relief and to recover damages, including treble damages, costs of suit, and reasonable attorneys' fees, against Defendants, and each of them, jointly and severally, for injuries sustained by Plaintiff as a result of violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, as alleged herein. Plaintiff also seeks [substantial] punitive damages; for malicious acts committed by Defendants, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution; the laws of the United States; the laws of the State of California;.

2.     Plaintiff brings this action resulting from damages incurred due to the unlawful terminations of Plaintiff's YouTube Channels: the "Williby Channel;" and "The Attorney Depot™" Channel between October 8, 2008 and August 1, 2018. Plaintiff's channels were wrongfully restricted and terminated in violation of his federal constitutional rights to free speech and in violation of state and federal Statute(s).

3.     The Defendants, and each of them, jointly and severally, are entities created by Law and the individual subsidiary companies they are comprised of, taking advantage of their

**2**

interlocking directorships, conspired and agreed with each other to engage, and did in fact engage, in millions of predicate acts of mail fraud, in violation of RICO, 18 U.S.C. §§ 1341, 1962, as part of a scheme to defraud Plaintiff, a video content creator, obtain money from advertisement clients and monopolize the U.S. advertisement markets.

4.      The Defendants and each of them, jointly and severally, devised schemes or artifices to defraud called "Adsense," whereby the defendants, 1) charged all advertising customers $0.10 - $0.30 for the placement of "bumper," or "non-skippable" advertisement on websites and videos owned by Plaintiff and other video content creators, while leading Plaintiff and other video content creators to believe they would receive revenue of $0.25 per video watched, or website click/visit; and 2) devised schemes or artifices to defraud called "Adsense, Pay-Per-Click," whereby the defendants charge fees in an unknown amount to advertisement customers and place "ad units" on Plaintiff's videos, websites and the videos, websites of others and fails to pay Plaintiff, unless a party clicks on the "ad unit." Payment from the scheme has in many cases netted plaintiff $0.01 for an entire month; 3) conspired and agreed with each other to engage, and did in fact engage, in the fraudulent claims and allegations of copyright infringement against Plaintiff, in order to violate Plaintiff's First Amendment Rights under the United States Constitution; and 4) conspired and agreed with each other to engage, and did in fact engage, in the fraudulent claims and allegations of copyright infringement against Plaintiff, in order to deny Plaintiff advertisement revenue. Instead, the Defendants and each of them, jointly and severally, intended such funds for their own pecuniary benefit.

4.      The illegal retention of advertisement revenue by the Defendants and each of them, jointly and severally, of the portion of the advertisement fees earned by Plaintiff has resulted in billions of dollars of illegal gains for them.[1]

5.      From the year 2003 to the present, in furtherance of the scheme to defraud Plaintiff and other YouTube channel owners, the Defendants and each of them, jointly and

---

[1] In the first week of March 2018, Google has agreed to pay $11 million to settle a class-action by publishers who accused Google of wrongly withholding ad revenue. The deal calls for Google to reimburse some publishers between 30% and 100% of the money they were owed when their accounts were terminated. See Free Range Content, Inc. v. Google Inc., No. 5:2014-cv-02329 (BLF). However, as of 08/01/2018, Defendants have engaged in the same conduct against Plaintiff.

**3**

severally, caused, and continue to cause, the United States mails and electronic mails to be used to send and receive millions of checks, or tax documents to the over 5,000,000 YouTube Channel owners[2] (or creators) and approximately 2,000,000 "adsense" customers, which contained the charges and the payments for the "adsense" payment program. Each of these mailings is an act that is indictable as mail fraud and together they constitute a pattern of racketeering activity. By conspiring to conduct, and in fact conducting, the affairs of their ENTERPRISE, as defined hereunder, through this pattern of racketeering activity, the Defendants and each of them, jointly and severally, violated RICO, 18 U.S.C. § 1962(c) & (d). As result, the Plaintiff was injured in his property.

6.      Furthermore, the Defendant entities and each of them, jointly and severally, created by Law transmitted, by means of interstate wire, racketeering proceeds gained from the scheme to defraud to a financial institution in the State of California and other U.S. and global financial institutions. Each of these wire transfers is a predicate act that is indictable as wire fraud, under 18 U.S.C. § 1343, and together they constitute a separate and distinct pattern of racketeering activity. The Defendant entities and each of them, jointly and severally, then used or invested income received from both patterns of racketeering activity respectively comprised of predicate acts of mail or wire fraud, in its business operations, in order to further engage in illegal dealing in premiums, in violation of RICO, 18 U.S.C. § 1962(a). As a result, the  Plaintiff continues to be injured in his property.

7.      Moreover, the Plaintiff is requesting declaratory and injunctive relief. A declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and permanent injunction will guarantee that the Defendants and each of them, jointly and severally, and all associated parties, cease and permanently desist from engaging in illegal dealings in business operations, advertisement revenue programs and violation of constitutional rights as to the Plaintiff and the violation of the applicable laws, statutes and regulations. Such relief will also ensure that other governing bodies do not acquiesce to the Defendants' conduct. The injunctive relief sought is authorized by Federal Rules of Civil Procedure, Rule 65(a)(1)(2); and 15 U.S.C. § 26.

---

[2] This number does not reflect the actual number of person engaged in the "adsense" programs on other platforms owned by defendants.

4

8.      Pursuant to the Seventh Amendment of the United States Constitution, the Plaintiff demands a trial by jury in the instant case. Fed. R. Civ. P. 38b.

## II. JURISDICTION & VENUE

9.      This Honorable Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, 1338(b) this being a civil action, which arises under 15 U.S.C. §§ 1, 2, and § 15; 17 U.S.C. § 512, Subsection (g)(1); 18 U.S.C. §§ 1961-1968, 901(a) of RICO; and in particular, under 18 U.S.C. § 1964. Plaintiff also brings this action, in part, under 28 U.S.C. §§ 1331 and 1338 for damages sustained by Plaintiff as a result of Defendants' violation of 15 U.S.C. § 1125(a).

10.     This Court is an appropriate venue for this cause of action under 28 U.S.C. § 1391 (a)(1)(2); 28 U.S.C. § 1391 (b)(1) the Defendants and each of them, jointly and severally, are present and regularly conducts business affairs in this judicial district; 28 U.S.C. § 1391 (b)(2) because the act and/or omissions complained of: took place and continue to take place in this judicial district; evidence, business and computer records relevant to the allegations are maintained in this judicial district; 28 U.S.C. § 1391 (b)(3) ([…] any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.); 28 U.S.C. § 1391 (c)(3) ["a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."]; and 28 U.S.C. § 1391 (d) Residency of Corporations in States With Multiple Districts.

11.     The Plaintiff further invokes the supplemental jurisdiction of this Court, under 28 U.S.C. § 1332, to hear, adjudicate claims and recover damages, including treble damages, cost of suit, and reasonable attorney fees, against Defendants for injuries sustained by Plaintiff as a result of violations of California Fraud and unfair business competition laws, Business & Professions Code, Section 17200, et. seq., since they are so related to the afore stated federal claims that they all form part of the same case or controversy under Article III of the Constitution of the United States.

**5**

12.     Personal jurisdiction also exists over the Defendants pursuant to 15 U.S.C. § 22. **(a)** The Defendants illegally contract, combine, and conspire with persons and entities that have committed, and continue to commit overt acts within California in furtherance of the contract, combination and conspiracy alleged in this Complaint. **(b)** The Defendants' conduct collectively and individually has unlawfully restrained the domestic and foreign commerce of the United States and injured consumers in the United States and foreign countries. **(c)** As a result of Defendants' anti-competitive acts, as alleged in this Complaint, consumers and Plaintiff have sustained harm in California.

### III. Parties

### A. The Plaintiff

13.     Plaintiff Harry J. Williby ("Plaintiff") is the [individual, sole-proprietor] owner of the Youtube Channels, doing business as (dba) The "Harry Williby Channel" and "The Attorney Depot™ Channel" and "Williby Blogs." He currently resides in California, County of Shasta.

14.     The Plaintiffs have learned of the facts object of the present action within the four years prior to the filing of the present complaint. Moreover, as a result of the Defendants fraudulent acts, including concealment, the applicable statutes of limitations have been tolled or have not yet begun to run.

### B. The Defendants[3]

15.     Defendant Alphabet Holding Corporation (hereafter "Alphabet") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Alphabet is an American multinational conglomerate headquartered in Mountain View, California 94043, at 1600 Amphitheatre Parkway (County of Santa Clara). Alphabet, Inc. was created through a corporate restructuring of Google on October 2, 2015. Alphabet, Inc. became the parent company of Google and several former Google subsidiaries. Alphabet Inc., is thus a legal entity doing business as (hereafter, "dba") Google, Inc., dba, Blogger, dba, Google Adsense and dba, YouTube, LLC." Shares of Google's stock have been

---

[3] On information and belief, Defendants, and each of them, jointly and severally, has for many years engaged in substantial business activities in California and continues to engage in such activities by, among other things, promoting and selling its goods and services to customers located in California.

**6**

converted into Alphabet stock, which trades under Google's former ticker symbols of "GOOG" and "GOOGL". Google's core businesses are its search engine and advertising sales. Alphabet is essentially a holding company for Google, as well as all the projects, ideas, capital investments, and subsidiaries that Google has acquired over the years.

16.    Defendant Viacom (hereafter, "Viacom") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Viacom, dba Paramount Pictures Corporation (hereafter, "Paramount"). Paramount is an American film studio based in Hollywood, California (90038) at 5555 Melrose Avenue (County of Los Angeles). Paramount has been a subsidiary of the American media conglomerate Viacom since 1994. Shares of Paramount's stock were converted into Viacom stock, which trade under "VIAB". Paramount Pictures Corporation produces filmed entertainment services. The Company offers interactive gaming applications through digital distribution sites, as well as allows movie fans access to sharing movie clips. Paramount sells, markets, and distributes DVDs and blu-ray discs for films and television shows internationally. Defendant Viacom, dba Paramount, does business with Defendant YouTube, maintains a YouTube Account, and a "YouTube ad spend" account with Defendant Alphabet.

17.    Defendant Apple Corps Ltd. (hereafter "Apple") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Apple is a multi-armed multimedia corporation founded in London in January 1968 by the members of the Beatles to replace their earlier company (Beatles Ltd) and to form a conglomerate. Apple is headquartered in London, United Kingdom at 27 Ovington Square London, SW3 1LJ, United Kingdom. Apple Corps Limited produces and sells music albums, films, and video games primarily in the United Kingdom, United States, and Japan. Apple Corps manages the rights to the Beatles' work and is controlled by Paul McCartney, Ringo Starr and the estates of John Lennon and George Harrison. Defendant Apple, does business with Defendant YouTube, maintains a YouTube Account, and a "YouTube ad spend" account with Defendant Alphabet.

18.     Defendant Sony Corporation (hereafter "Sony") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Sony is a Japanese multinational conglomerate corporation headquartered in Kōnan, Minato and Tokyo, Japan. Its diversified business includes consumer and professional electronics, gaming, entertainment and financial services. Sony Corporation of America, located in New York, NY. It is the U.S. headquarters of Sony Corporation, based in Tokyo, Japan. Sony's principal U.S. businesses include Sony Electronics Inc., Sony Mobile Communications (USA) Inc., Sony Interactive Entertainment LLC., Sony Pictures Entertainment Inc., Sony Music Entertainment and Sony/ATV Music Publishing LLC. Sony Corporation's stock trades under the ticker symbol of SNE on the New York Stock Exchange. Defendant Sony, does business with Defendant YouTube, maintains a YouTube Account, and a "YouTube ad spend" account with Defendant Alphabet.

19.     Defendant Hearst Corporation (hereafter "Hearst") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Hearst is located at 300 W. 57th Street, New York, NY 10019. Hearst is one of the nation's largest diversified media, information and services companies with more than 360 businesses. Its major interests include ownership in cable television networks such as A&E, HISTORY, Lifetime and ESPN; 31 television stations such as WCVB-TV in Boston and KCRA-TV in Sacramento, Calif., which reach a combined 19 percent of U.S. viewers; newspapers such as the Houston Chronicle, San Francisco Chronicle and Albany Times Union. Defendant Hearst Corporation also owns The Comcast Cable Conglomerate. Defendant Hearst co-owns ESPN (a U.S.-based global pay television sports channel owned by ESPN Inc., a joint venture owned by The Walt Disney Company (80%) and Hearst Communications (20%)). Defendant Hearst, does business with Defendant YouTube, maintains a YouTube Account, and a "YouTube ad spend" account with Defendant Alphabet.

20.     Defendant Walt Disney Company (hereafter "Disney") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Disney is a diversified multinational mass media and entertainment conglomerate,

8

1  headquartered at the Walt Disney Studios in Burbank, California, 500 S. Buena Vista St.,
2  Burbank, CA, 91521-9722. The company is known for its film studio, Walt Disney Studios,
3  which is today one of the largest and best-known studios in American cinema. Disney's other
4  main divisions are Walt Disney Parks, Experiences and Consumer Products, Disney Media
5  Networks, and Walt Disney Direct-to-Consumer and International. Disney also owns and
6  operates the ABC broadcast network; cable television networks such as Disney Channel; ESPN
7  (a U.S.-based global pay television sports channel owned by ESPN Inc., a joint venture owned
8  by The Walt Disney Company (80%) and Hearst Communications (20%)); A&E Networks; and
9  Freeform; publishing, merchandising, music, and theater divisions; and owns and licenses Walt
10 Disney Parks and Resorts (a group of 14 theme parks around the world). On December 14, 2017,
11 Disney announced an agreement to merge with 21st Century Fox for $52 billion. The bid was
12 later increased to $71 billion in June 2018. The merger largely included Fox's entertainment
13 assets, including filmed entertainment, cable entertainment, and direct broadcast satellite
14 divisions in the UK, Europe and Asia. The newly merged entity retained the former company's
15 name, meaning The Walt Disney Company remained as the name of the merged business. Walt
16 Disney Company is a publicly traded company (NYSE:DIS). Disney reported third-quarter
17 adjusted earnings per share of $1.87 on revenue of $15.23 billion after the closing bell on
18 Tuesday (August 7, 2018,). Revenue was up 7 percent from a year ago.

19      21.      Defendant Tele München Fernseh GmbH + Co. Produktionsgesellschaft (VOD),
20 or simply, The Tele München Gruppe (hereafter "TMG") was created by Law as a private legal
21 entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued.
22 TMG media company is based in Munich, Germany. The activities of the TMG include trade in
23 licenses, investments in television and radio stations and distribution and production of television
24 films and movies. TMG has one of the largest film libraries in Europe. Through its subsidiaries,
25 TMG has a presence in film and television production as well as distribution arms in the
26 theatrical, home entertainment, TV and VOD segments. Since May 2017 TMG runs its first own
27 SVOD-Channel FILMTASTIC on Amazon's platform Prime Video Channels and on Rakuten TV.
28 TMG is a shareholder in the leading US-based production company Storied Media Group and in

the digital production and distribution company Load Studios. In addition, TMG is majority shareholder in the publicly quoted production company Odeon Film AG. TMG is one of the largest license trading companies in Europe and one of the most respected players in the international market. Defendant TMG, does business with Defendant YouTube, maintains a YouTube Account, and a "YouTube ad spend" account with Defendant Alphabet.

22.     Icon Film Distribution Pty Ltd (Australia VOD) commonly referred to as "The Dendy/Icon group" (hereafter "Icon Group") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. The Australian office located at 34 Lennox St, Newtown, NSW 2042, Australia. The U.S. location is at 808 Wilshire Blvd, Santa Monica, California, United States. Icon Group is one of Australia's leading independent cinema and film distributors. The company comprises Icon Film Distribution and Dendy Cinemas. The group focuses on quality feature films, TV and alternative content within the Australian and New Zealand markets. The group was previously owned by Mel Gibson and partner Bruce Davey. Gibson and Davey are the key principals behind the independent film company Icon Productions. Icon Film is an 'all rights' business that distributes content throughout theatrical, home entertainment, ancillary, pay per view, digital, as well as pay and free television channels. Defendant Icon Group, does business with Defendant YouTube, maintains a YouTube Account, and a "YouTube ad spend" account with Defendant Alphabet.

23.     Defendant Fintage House was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Defendant Fintage House is a privately owned global film and TV rights company. Fintage House fully acquired Lasso Group from Billion Dollar Boy At the end of 2017. Lasso became a full member company under the Fintage House group after a share transfer in late 2017. Defendant Lasso Group, was created in 2015 by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Defendant Lasso Group is one of the fastest growing online monetization companies in the world. Defendant Fintage House, dba, Lasso Group has offices in The Netherlands and Hungary with consultants in Australia, France, Germany, Italy, Japan, North and South America, South East Asia, Spain and the UK. Defendant Lasso Group is

10

located at 9100 Wilshire Blvd. Beverly Hills, CA, 90212. Defendant Lasso is a leader in online rights management for independent movie & TV monetizing working with YouTube, Dailymotion, Instagram and Facebook. Defendants Fintage House, dba, Lasso Group, does business with Defendant YouTube, maintains a YouTube Account, and a "YouTube ad spend" account with Defendant Alphabet.

24.     The true names and capacities of Defendants sued as Does/Roes 1 through 10 are unknown to Plaintiff, who therefore sues these Defendants by fictitious names. Doe/Roe Defendants include the employees, agents, servants of the Defendants and each of them, jointly and severally, who directly approved the acts, omissions and policies described herein, as well as agents, officers and employees of the Defendants who are liable in connection with one or more of the claims sued upon here and are responsible in some manner for the wrongful acts and conduct alleged herein. Plaintiff will amend this Complaint to show Doe/Roe Defendants' true names and capacities when they have been ascertained. Plaintiff is informed and believes, and herein allege, that such Doe/Roe Defendants are residents of the United States, the State of California, or have minimal and/or significant contacts with the State of California, to confer this court's jurisdiction.

25.     The Board of Directors of the Defendant companies, and each of them, jointly and severally, since their creation, and up to the present, has served as a conduit for the ENTERPRISE'S fraudulent objectives, by which the interlocking directors of the Defendant companies and their subsidiary members of such ENTERPRISE, jointly with other individuals, knowingly, intentionally and unlawfully, have met, planned, devised, organized, and assisted in the adoption and implementation of part, or all, of the fraudulent artifices that form part of the Scheme to Defraud, violate the United States Constitution and monopolize the Advertisement industry defined herein after.

26.     The Defendants, and each of them, jointly and severally, either on their own or through their agents, are currently found in, and/or transact business within, the State of California (United States), and/or at the time of the commission of the acts alleged hereunder were found in, and/or transacted business within the State of California (United States), and the

cause of action which is the object of this complaint arises out of those business transactions in the State of California (United States).

27.     At all times relevant herein, the Defendants, and each of them, jointly and severally, on their own or through their agents or employees, have knowingly, intentionally and unlawfully, aided and abetted and conspired with the other members of the ENTERPRISE defined hereunder to commit within the State of California (United States) the wrongful acts alleged in this complaint and/or committed or participated in the commission of those acts within or outside the State of California (United States), purposefully directing their wrongful acts toward the forum of California, causing in California, directly or indirectly, the violations of RICO; the Sherman Act; the United States Constitution; California Business & Professions Code; the California Civil Code and the injuries sustained by the Plaintiff.

28.     Each of the Defendants, individually, and through its association-in-fact with the other Defendants (the ENTERPRISE) is, or has been engaged in, or its activities affect or have affected, interstate commerce.

29.     Defendants' racketeering activities were conducted through a pattern of acts and transactions, which occurred and/or had their effect within the State of California and the United States.

### IV. Associated-In-Fact Individuals

30.     Larry Page is the CEO of Alphabet, Inc., for the period covering October 2, 2015 to Present. From September 4, 1998 to October 2, 2015, Page served as CEO of Google. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving purchase(s) of competitive on-line advertisement companies, approving Adsense premium rates, approving the "Adsense Pay-Per-Click program," by-laws, operations, stock purchases, transfers and sales, advertisement contracts, and rules & regulations that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

31.     Sergey Brin is the President of Alphabet, Inc., for the period covering October 2, 2015 to Present. From September 4, 1998 to October 2, 2015, Brin served as President of

Google. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving purchase(s) of competitive on-line advertisement companies, approving Adsense premium rates, approving the "Adsense Pay-Per-Click program," by-laws, operations, stock purchases, transfers and sales, advertisement contracts, and rules & regulations that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

32.     Eric Emerson Schmidt was the Executive Chairman of Google from 2001 to 2015 and Alphabet Inc. from 2015 to 2017. From 2001 to 2011, Schmidt served as the CEO of Google. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving purchase(s) of competitive on-line advertisement companies, approving Adsense premium rates, approving the "Adsense Pay-Per-Click program," and rules & regulations that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

33.     Sundar Pichai is the CEO of Google, Inc., for the period covering October 2, 2015 to Present. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving purchase(s) of competitive on-line advertisement companies, approving Adsense premium rates, approving the "Adsense Pay-Per-Click program," by-laws, operations, stock purchases, transfers and sales, advertisement contracts, and rules & regulations that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

34.     Robert Marc Bakish is the chief executive officer of Viacom. He has been at Viacom since 1997 in various roles, and was CEO of Viacom International Media Networks from 2011 to 2016. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, stock purchases, transfers and sales, advertisement contracts, rules and regulations for Defendant Viacom and her subsidiaries, and specifically those of Defendant Paramount, that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

35.     James N. Gianapoulous is the chairman and chief executive officer (CEO) of Paramount Pictures. Gianapoulous began his duties on April 3, 2017. He serves on the Board of Directors of the Motion Picture & Television Fund. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, stock purchases, transfers and sales, advertisement contracts, rules and regulations for Defendant Paramount, that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

36.     From 1970 to 2007, Apple's chief executive officer was former Beatles road manager Neil Aspinall. He did not officially bear that title until Allen Klein had left the company. The current CEO is Jeff Jones. Jones was formerly an Executive Vice President at Sony/BMG, where he managed Sony's recorded catalogs, including repackaging classic albums. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, stock purchases, transfers and sales, advertisement contracts, rules and regulations for Defendant Apple, that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

37.     Kazuo Hirai is the Chairman of Sony Corporation. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, stock purchases, transfers and sales, advertisement contracts, rules and regulations for Defendant Sony, that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

38.     Kenichiro Yoshida is President and Chief Executive Officer of Sony Corporation. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, stock purchases, transfers and sales, advertisement contracts, rules and regulations for Defendant Sony, that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

**14**

39.     Steven R. Swartz is President & CEO Hearst Corporation. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, stock purchases, transfers and sales, advertisement contracts, rules and regulations for Defendant Hearst, that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

40.     Robbert Aarts and Niels Teves are Co-Chairmen of Fintage House, dba, Lasso Group. As such, they knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, stock purchases, transfers and sales, advertisement contracts, rules and regulations for Defendant Lasso Group, that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

41.     Vaucia Pahlad is Chief Operating Officer and Executive Vice President Fintage House, dba, Lasso Group. As such, she knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, advertisement contracts, rules and regulations for Defendant Lasso Group, that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

42.     Dr. Herbert Kloiber has over 30 years experience in the film and television industries. At present, he is Chairman and majority shareholder of Tele-Munchen Gruppe (TMG) + Co. Produktionsgesellschaft VOD. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, stock purchases, transfers and sales, advertisement contracts, rules and regulations for Defendant Tele-Munchen Gruppe (TMG) + Co. Produktionsgesellschaft VOD, that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

43.     Mel Gibson and long-time producing partner Bruce Davey, are co-owners of Icon Film Distribution Pty Ltd (Australia VOD). They are the key principals behind the independent

film company Icon Productions. As such, they knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, stock purchases, transfers and sales, advertisement contracts, rules and regulations for Defendant Icon Film Distribution Pty Ltd (Australia VOD), that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

44.     Robert Allen Iger is chairman (2012 to present) and chief executive officer (CEO – 2005 to present) of The Walt Disney Company. Before working for Disney, Iger served as the president of ABC Television from 1994–95, and as president/COO of Capital Cities/ABC, Inc. from 1995 until Disney's acquisition of the company in 1996. As such, he knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving by-laws, operations, stock purchases, transfers and sales, advertisement contracts, rules and regulations for Defendant Disney, that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

45.     Each of the **Associated-In-Fact Individuals**, jointly and severally, knowingly, intentionally and unlawfully, aided and abetted and conspired with the members of the ENTERPRISE in approving advertisement contracts, rules and regulations for participation in the "Adsense, Pay-Per-Click" program that were used in carrying out the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

## V. OTHER PARTICIPANT INDIVIDUALS

46.     The Attorney General(s) of the State of California; the United States Attorney General(s); and the Federal Trade Commission for the period covering from 2003 and specifically, 2008 and up to the present time, were either willfully blind, and/or knowingly, intentionally and unlawfully, aided and abetted and conspired with the other members of the ENTERPRISE in allowing the perpetuation of the Scheme to Defraud, Monopolize and violate the First Amendment rights of Plaintiff described hereunder.

## VI. The First Amendment to the United States Constitution

47.     The First Amendment, (to the United States Constitution) (along with the rest of the Bill of Rights) was submitted to the states for ratification on September 25, 1789. The amendment was adopted on December 15, 1791. Thus, the laws regarding the freedom of speech in the United States, … are well established. However, Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, Google Adsense and, YouTube, LLC., takes a different approach to the First Amendment. Specifically, Defendants, and each of them, jointly and severally, believes that the right to generate billions in profit through on-line advertisements (annually) trumps the First Amendment, to the United States Constitution. The First Amendment, to the United States Constitution gives a private party and media entities, the right to criticize government officials.

48.     It is well established law (of the land) that material in the Public Domain is not subject to United States Copyright Law. Furthermore, well established law (of the land) dictates that statutory "fair use" law(s) allows a party (and specifically Plaintiff) the right, to use material copyrighted under United States Copyright Law, … and based upon the First Amendment. Once again, Defendants, and each of them, jointly and severally, and specifically Alphabet, dba, Google, dba, blogger dba YouTube, LLC., takes a different approach to Public Domain and statutory "fair use" law(s). Specifically, the Defendants believe where Public Domain and statutory "fair use" law(s) interfere with profit, they become null and void.

49.     One of America's favorite cliché states that baseball is America's "apple pie." However, with the advent of the Internet, it can be said that baseball is no longer America's "apple pie." More Americans search the Internet for Advertisements, rather than baseball. Advertisement permeates the American landscape, … from groceries to luxury items. Because of the Internet, 90% of American advertisements, are placed online. Thus, it can now be factually stated that Internet Advertisement is America's "Apple pie". However, Defendants, and each of them, jointly and severally, and specifically Alphabet, dba, Google, dba YouTube, LLC., takes a different approach. The defendants, and each of them, jointly and severally do not believe that Internet Advertisement is America's "apple pie." The conduct of the defendants, and each of them, jointly and severally, indicates they believe the Internet Advertisement, or America's 21st Century "apple pie" belongs to them, … and them alone.

### VII. The Digital Millennium Copyright Act

50.     Under the Digital Millennium Copyright Act ("DMCA," hereafter) (17 U.S. Code § 512(c)(3)) if the party believes [s]he has been affected by copyright infringement, the "DMCA" provides as follows: "The statute [...] establishes procedures for proper notification, and rules as to its effect. (§ 512(c)(3)). Under the notice and takedown procedure, a copyright owner submits a notification under penalty of perjury, including a list of specified elements, to the service provider's designated agent. Failure to comply substantially with the statutory requirements means that the notification will not be considered in determining the requisite level of knowledge by the service provider. If, upon receiving a proper notification, the service provider promptly removes or blocks access to the material identified in the notification, the provider is exempt from monetary liability. In addition, the provider is protected from any liability to any person for claims based on its having taken down the material." (§ 512(g)(1)).

51.     "In order to protect against the possibility of erroneous or fraudulent notifications, certain safeguards are built into section 512. Subsection (g)(1) gives the subscriber the opportunity to respond to the notice and takedown by filing a counter notification. In order to qualify for the protection against liability for taking down material, the service provider must promptly notify the subscriber that it has removed or disabled access to the material. If the subscriber serves a counter notification complying with statutory requirements, including a statement under penalty of perjury that the material was removed or disabled through mistake or misidentification, then unless the copyright owner files an action seeking a court order against the subscriber, the service provider must put the material back up within 10-14 business days after receiving the counter notification."

52.     "Penalties are provided for knowing material misrepresentations in either a notice or a counter notice. Any person who knowingly materially misrepresents that material is infringing, or that it was removed or blocked through mistake or misidentification, is liable for any resulting damages (including costs and attorneys' fees) incurred by the alleged infringer, the copyright owner or its licensee, or the service provider." (Section 512(f))

### VIII. The Sherman Act

53.     The Sherman Antitrust Act[4] was passed in 1890 as 15 U.S.C. §§ 1-7 and amended by the Clayton Act in 1914 (15 U.S.C. § 12-27). The Act prohibits activities that restrict interstate commerce and competition in the marketplace. The Act is broad and sweeping in scope. § 1 of the Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." § 2 of the Act further prohibits monopolization or attempts at monopolizing any aspect of interstate trade or commerce and makes the act a felony. Federal district courts have the jurisdiction to enjoin violations of the Sherman Act, and these proceedings are instituted by United States Attorneys in their respective districts. The injured party (whether it is the federal government, an individual state, or a private party) is entitled to three times the amount of injury that it has suffered; this award is known as treble damages."

### IX. Factual Allegations[5]

### (A) The Conspiracy to Violate Plaintiff's First Amendment Rights

54.     Plaintiff is a U.S. Citizen who enjoys a First Amendment Right under the Constitution of the United States. In exercising this right, Plaintiff created two (2) YouTube channels and two (2) Google+ accounts between the time period October 15, 2008 and November 13, 2013. However, between the time period of October 15, 2008 and August 1, 2018, defendants, and each of them, jointly and severally, used computing devices, electronic mail, the YouTube website and the Digital Millennium Copyright Act to allege claims of copyright infringement and theft. As a direct and proximate result of using computing devices, electronic mail, the YouTube website and the Digital Millennium Copyright Act to allege claims of copyright infringement and theft against plaintiff, by defendants, and each of them, jointly and severally, Defendant Alphabet has terminated Plaintiff's YouTube channels and Plaintiff's Google+ accounts three (3) times between the time period of October 15, 2008 and August 1, 2018, despite the fact neither defendant has filed suit against plaintiff in federal court. As a direct and proximate result of these acts and/or omissions by defendants, and each of them, jointly and

---

[4] http://www.law.cornell.edu/uscode/html/uscode15/usc_sup_01_15_10_20.html
[5] Unless otherwise specified, the allegations of this complaint are based upon information and belief.