Harry J. Williby
P.O. Box 990755
Redding, CA 96099
**Phone:** (530) 209-0530
**E-mail:** harrywilliby@yahoo.com
**Attorney for:** In Pro Se

*FILED*

NOV 0 9 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
NORTHERN DISTRICT OF CALIFORNIA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| **Harry J. Williby,**<br>Plaintiff,<br><br>vs.<br><br>**Alphabet Corporation, dba,**<br>**Google, LLC., dba, Blogger, dba, Google,**<br>**dba, Google Adsense and, YouTube, LLC.**<br>**Viacom, dba, Paramount Pictures**<br>**Corporation**<br>**Apple Corps Ltd.,**<br>**Sony Corporation,**<br>**Hearst Corporation,**<br>**Walt Disney Company,**<br>**Fintage House, dba, Lasso Group,**<br>**Tele München Fernseh GmbH + Co.**<br>**Produktionsgesellschaft VOD,**<br>**Icon Film Distribution Pty Ltd (Australia**<br>**VOD),**<br>**Eric Schmidt,** (*In his Official Capacity*)<br>**Sergey Brin,** (*In his Official Capacity*)<br>**Larry Page,** (*In his Official Capacity*)<br>**Sundar Pichai,** (*In his Official Capacity*)<br>**Marissa Mayer,** (*In her Official Capacity*)<br>**Susan Wojcicki,** (*In her Official Capacity*)<br>**Sheryl Sandberg,** (*In her Official Capacity*)<br>**and Does/Roes 1-10,**<br>Defendants. | **Case No.:** **3:18-cv-05986-JST**<br><br>**[FIRST AMENDED] COMPLAINT FOR DAMAGES**<br><br>*(Federal Claims)*<br><br>**1. MATERIAL MISREPRESENTATION(S) 17 U.S.C. § 512(f);**<br>**2. CONSPIRACY TO VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS; AND**<br>**3. VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS 42 U.S.C. § 1983**<br>**4. VIOLATION OF THE LANHAM ACT (15 U.S.C. § 1125(a)(1)(B)).**<br><br>*(Pendent State Law Claims)*<br><br>**5. UNFAIR COMPETITION;**<br>**6. UNLAWFUL BUS. PRACTICES;**<br>**7. BREACH OF CONTRACT;**<br>**8. CONVERSION;**<br>**9. FRAUDULENT MISREPRESENTATION; AND**<br>**10. BREACH OF COVENANT & GOOD FAITH**<br><br>**REQUEST FOR DECLARATORY JUDGMENT**<br><br>**REQUEST FOR EXEMPLARY (CA CIVIL CODE § 3294(c)) & PUNITIVE DAMAGES**<br><br>**REQUEST FOR A T.R.O./PRELIMINARY INJUNCTION** (*Filed Hereafter*)<br><br>**([TELEPHONIC] ORAL ARGUMENT REQUESTED; EXPEDITED CONSIDERATION REQUESTED)**<br><br>**MORE THAN $75,000.00 AT ISSUE**<br><br>**DEMAND FOR JURY TRIAL** |

i

1

## INTRODUCTION

1.      The plaintiff, Harry J. Williby (hereafter "Plaintiff," or "Plaintiff's") moves the Court for entry of judgment in his favor against Alphabet Corporation, dba, Google, LLC., dba, Blogger, dba, Google AdSense (Pay-Per-Click) and, YouTube, LLC. (hereafter "Alphabet," or "Alphabet, dba, ..."); Viacom, dba, Paramount Pictures Corporation; Apple Corps Ltd.; Sony Corporation; Hearst Corporation; Walt Disney Company; Fintage House, dba, Lasso Group; Tele München Fernseh GmbH + Co. Produktionsgesellschaft VOD; Icon Film Distribution Pty Ltd (Australia VOD); the following Defendants, in their official capacities, Sergey Brin; Eric Schmidt; Sundar Pichai; Marissa Mayer; Susan Wojcicki; and Does/Roes 1-10, (collectively referred to as "Defendant's," or "Defendants'") and each of them, jointly and severally, and in support of such Complaint, respectfully avers as follows:

2.      Plaintiff bring this action against Defendants, and each of them, jointly and severally, to recover more than $3,500,000,000.00 in global, on-line digital advertisement revenue, lost over ten years through breach of fiduciary duty, negligence, fraud, conversion, theft, unlawful, unfair competition and business practices of Defendants, and each of them, jointly and severally. Despite Plaintiff's demand for AdSense (PPC) revenue payment, Defendant Alphabet has refused to repay Plaintiff for his losses.

3.      Plaintiff also brings this action against Defendant Alphabet, dba, Google, dba, Google+, dba, Google AdSense (PPC), dba, Blogger, dba, YouTube, LLC., for violation of Plaintiff's First Amendment Rights under the United States Constitution (42 U.S.C. §§ 1983, 1988); and against all Defendants for Material Misrepresentation under 17 U.S.C. § 512(f). Defendant Alphabet is not only vicariously liable to Plaintiff for Google, dba, Google+, dba, Google AdSense (PPC), dba, Blogger, dba, YouTube, LLC.,'s theft, fraud and breach of contract, Alphabet is also liable for the negligent supervision and retention of its agents.

4.      Plaintiff also brings this action against Defendant Alphabet, dba, Google, dba, Google+, dba, Google AdSense (PPC), dba, Blogger, dba, YouTube, LLC., seeking declaratory and injunctive relief. Plaintiff seeks a declaratory judgment, declaring Defendant Alphabet, dba, Google, LLC., dba, Google+, dba, Blogger, dba, YouTube, LLC., quasi-government actors,

operating a public forum and performing a traditional government function(s), and in doing so, violated Plaintiff's First Amendment Rights; and an injunctive enjoining said violation of Plaintiff's rights.

5.     Accordingly, Plaintiff seek damages against Defendants, and each of them, jointly and severally, in an amount to be proven at trial, plus pre-judgment interest, and all other relief as allowed by law.

## PARTIES

### A. The Plaintiff

6.     Plaintiff Harry J. Williby ("Plaintiff") is the [individual, sole-proprietor] owner of the Youtube Channels, doing business as (dba) The "Harry Williby Channel" and "The Attorney Depot™ Channel" and "Williby Blogs (Blogger)" and Google+ accounts Harry J. Williby and The Attorney Depot™. Plaintiff currently resides in California, County of Shasta. Plaintiff severally subscribed to the relevant policies of Google, LLC., Google+, Google AdSense (PPC), Blogger and YouTube, LLC., described herein and suffered damages by a loss of his First Amendment Freedoms; Material misrepresentations alleging copyright infringement by the Defendants; contributing text, photographs, videos, music and interactive media plugins on the Google platforms, generating revenue for the AdSense (PPC) digital ad program at issue; the fraudulent activities and negligence of the Defendants.  The Plaintiff learned of the facts object of the present action within the four years prior to the filing of the present complaint. Moreover, as a result of the Defendants' fraudulent acts, including concealment, the applicable statutes of limitations have been tolled or have not yet begun to run.

### B. The Defendants[1]

7.     Plaintiff is informed and believes, and based thereupon alleges, Defendant Alphabet Holding Corporation (hereafter "Alphabet") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Alphabet is an American multinational conglomerate headquartered in Mountain View,

---

[1] On information and belief, Defendants, and each of them, jointly and severally, has for many years engaged in substantial business activities in California and continues to engage in such activities by, among other things, promoting and selling its goods and services to customers located in California.

California 94043, at 1600 Amphitheatre Parkway (County of Santa Clara). Alphabet, Inc. was created through a corporate restructuring of Google on October 2, 2015. Alphabet, Inc. became the parent company of Google and several former Google subsidiaries. Alphabet Inc., is thus a legal entity doing business as (hereafter, "dba") Google, Inc., dba, Blogger, dba, Google AdSense (PPC) and dba, YouTube, LLC." Shares of Google's stock have been converted into Alphabet stock, which trades under Google's former ticker symbols of "GOOG" and "GOOGL". Google's core businesses are its search engine and advertising sales through its global AdSense (PPC) program. Alphabet is essentially a holding company for Google, as well as all the projects, ideas, capital investments, and subsidiaries that Google has acquired over the years.

8.    Plaintiff is informed and believes, and based thereupon alleges, Defendant Alphabet, dba, Google, dba, Google+, dba, Google AdSense (PPC), dba, Blogger, dba, YouTube, LLC., also operates as a United States (and Global) public forum ( or "private property dedicated to public use,") performing the following functions, some of which are traditionally reserved for the government:

(a) Hosting live and pre-recorded, public criminal arraignments, hearings, trials and sentencing of defendants on YouTube, LLC., ("The Sixth Amendment guarantees the rights of criminal defendants, including the right to a public trial without unnecessary delay, ...") a traditional government function;

(b) Hosting (U.S.) Police Department YouTube channels, whereby the police release information regarding criminal suspects; publicize arrest warrants; and seek information regarding the identity and location of criminal suspects;

(c) Hosting oral arguments before the Ninth Circuit Court of Appeals on the Court's (9th Circuit) YouTube Channel;

(d) Hosting YouTube channels owned by municipal, state and commonwealth courts across the Nation;

(e) Allowing U.S. political candidates (including Barack Obama, Hillary Clinton and Donald J, Trump) to raise funds, campaign, and secure voters/votes through ownership of YouTube channels;

(f) Defendant YouTube's corporate, public participation in the National debate on the Second Amendment of the U.S. Constitution;[2]

(g) Defendant Alphabet, dba, Google, dba, Google+, dba, Google AdSense (PPC), dba, Blogger, dba, YouTube, LLC., publicly stated support of Democrat political candidates (and elected officials) including Barack Obama, Hillary Clinton, the Democrat party; their public and vocal opposition to President Trump's election; and Defendants' publicly stated position of using "their massive resources" to influence future elections.

9.    Plaintiff is informed and believes, and based thereupon alleges, Defendant Viacom (hereafter, "Viacom") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Viacom, dba Paramount Pictures Corporation (hereafter, "Paramount"). Paramount is an American film studio based in Hollywood, California (90038) at 5555 Melrose Avenue (County of Los Angeles). Paramount has been a subsidiary of the American media conglomerate Viacom since 1994. Shares of Paramount's stock were converted into Viacom stock, which trade under "VIAB".

10.    Plaintiff is informed and believes, and based thereupon alleges, Defendant Apple Corps Ltd. (hereafter "Apple") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Apple is a multi-armed multimedia corporation founded in London in January 1968 by the members of the Beatles to replace their earlier company (Beatles Ltd) and to form a conglomerate. Apple Corps manages the rights to the Beatles' work and is controlled by Paul McCartney, Ringo Starr and the estates of John Lennon and George Harrison. Apple is headquartered in London, United Kingdom at 27 Ovington Square London, SW3 1LJ, United Kingdom.

11.    Plaintiff is informed and believes, and based thereupon alleges, Defendant Sony Corporation (hereafter "Sony," or "Defendant Sony") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued.

---

[2] "While we've long prohibited the sale of firearms, we recently notified creators of updates we will be making around content promoting the sale or manufacture of firearms and their accessories, specifically, items like ammunition, gatling triggers, and drop-in auto sears," YouTube said in a statement. The policy shift came from YouTube in direct response to the Parkland school shooting, in which 17 people were killed at Marjory Stoneman Douglas High School in February of 2018.

Sony is a Japanese multinational conglomerate corporation headquartered in Kōnan, Minato and Tokyo, Japan. Sony Corporation of America, is located at 25 Madison Avenue, New York City, New York,[3] 10010-3683, United States. Sony Corporation's stock trades under the ticker symbol of SNE on the New York Stock Exchange.

12.     Plaintiff is informed and believes, and based thereupon alleges, Defendant Hearst Corporation (hereafter "Hearst") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Hearst is located at 300 W. 57th Street, New York, NY 10019.

13.     Plaintiff is informed and believes, and based thereupon alleges, Defendant Walt Disney Company (hereafter "Disney") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Disney is a diversified multinational mass media and entertainment conglomerate. Walt Disney Company is a publicly traded company (NYSE:DIS). Disney is headquartered at the Walt Disney Studios in Burbank, California, 500 S. Buena Vista St., Burbank, CA, 91521-9722.

14.     Plaintiff is informed and believes, and based thereupon alleges, Defendant Tele München Fernseh GmbH + Co. Produktionsgesellschaft (VOD), or simply, The Tele München Gruppe (hereafter "TMG") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. TMG media company is based in Munich, Germany.

15.     Plaintiff is informed and believes, and based thereupon alleges, Icon Film Distribution Pty Ltd (Australia VOD) commonly referred to as "The Dendy/Icon group" (hereafter "Icon Group") was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Mel Gibson and partner Bruce Davey are the key principals behind the independent film company Icon Productions. The Australian office located at 34 Lennox St, Newtown, NSW 2042, Australia. The U.S. location is at 808 Wilshire Blvd, Santa Monica, California, 90401, United States.

---

[3] Sony Corporation has locations in San Diego, San Mateo and Culver City, California.

16.     Plaintiff is informed and believes, and based thereupon alleges, Defendant Fintage House, dba, Lasso Group was created by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued. Defendant Lasso Group[4] is located at 9100 Wilshire Blvd. Beverly Hills, CA, 90212.

17.     Plaintiff is informed and believes, and based thereupon alleges, The Board of Directors of the Defendant companies, and each of them, jointly and severally, since their creation, and up to the present, has served as a conduit for the fraudulent objectives, by which the interlocking directors of the Defendant companies and their subsidiary members, jointly with other individuals, knowingly, intentionally and unlawfully, have met, planned, devised, organized, and assisted in the adoption and implementation of part, or all, of the fraudulent artifices that form the basis of this complaint as defined herein after.

18.     Upon information and belief, Larry Page is the CEO of Alphabet, Inc., for the period covering October 2, 2015 to Present. From September 4, 1998 to October 2, 2015, Page served as CEO of Google. Upon information and belief, and based thereupon alleges, Eric Emerson Schmidt was the Executive Chairman of Google from 2001 to 2015 and Alphabet Inc. from 2015 to 2017. From 2001 to 2011, Schmidt served as the CEO of Google. Upon information and belief, Sundar Pichai is the CEO of Google, Inc., for the period covering October 2, 2015 to Present. Upon information and belief, Susan Wojcicki has been the CEO of YouTube since February 2014. In 1998, founders Page and Brin set up office in Wojcicki's garage in Menlo Park. Upon information and belief, Wojcicki became Google's first marketing manager in 1999. Upon information and belief, Wojcicki worked on the initial viral marketing programs, as well as the first Google Doodles. Upon information and belief, Wojcicki grew within Google to become senior vice president of Advertising & Commerce and lead the advertising and analytic products, including AdWords, AdSense, DoubleClick, and Google Analytics.

19.     Upon information and belief, Sheryl Sandberg was vice president of global online sales and operations at Google. Upon information and belief, Sandberg was responsible for

---

[4] Defendant Lasso Group, was created in 2015 by Law as a private legal entity, for profit, and with "general corporate powers," such as the faculties to sue and be sued.

online sales of Google's advertising and publishing products. Upon information and belief, She also managed sales operations of Google's consumer products and Google Book Search. Upon information and belief, during her time at Google, she grew the ad and sales team from four people to 4,000. Upon information and belief, Sandberg spent six years at Google where she built and managed Google's online sales channels for both AdWords and AdSense. She was involved in launching Google's philanthropic arm Google.org.[5]

20.     Upon information and belief, Robert Marc Bakish is the chief executive officer of Viacom. He has been at Viacom since 1997 in various roles, and was CEO of Viacom International Media Networks from 2011 to 2016. Upon information and belief, James N. Gianapoulous is the chairman and chief executive officer (CEO) of Paramount Pictures. Gianapoulous began his duties on April 3, 2017. He serves on the Board of Directors of the Motion Picture & Television Fund.

21.     Upon information and belief, Apple's chief executive officer is Jeff Jones. Jones was formerly an <u>Executive Vice President at Sony/BMG, where he managed Sony's recorded catalogs</u>, including repackaging classic albums.

22.     Upon information and belief, Kazuo Hirai is the Chairman of Sony Corporation. Upon information and belief, Kenichiro Yoshida is President and Chief Executive Officer of Sony Corporation.

23.     Upon information and belief, and based thereupon alleges, Steven R. Swartz is President & CEO Hearst Corporation.

24.     Upon information and belief, Robbert Aarts and Niels Teves are Co-Chairmen of Fintage House, dba, Lasso Group. Upon information and belief, Vaucia Pahlad is Chief Operating Officer and Executive Vice President Fintage House, dba, Lasso Group.

---

[5] Google.org claims on their website: "Our society is strongest when we stand against bias and inequity. That's why Google.org is supporting organizations that use data science and innovative new approaches to advance inclusion and justice for all." They continue: "While considerable progress has been made in protecting human and civil rights worldwide, too many people continue to be excluded or discriminated against based on race, gender, sexual orientation, religion, or citizenship status. Around the world, refugees are facing large barriers to inclusion. People with disabilities continue to be socially marginalized and disproportionately impacted by poverty. And systemic racial bias still pervades the systems designed to protect us; in the US, current incarceration trends indicate that 1 in 3 black men in America can expect to be imprisoned in their lifetime." (https://www.google.org/our-work/inclusion/). Plaintiff is informed and believes that "the rectification of racial injustice, or bias, in the United States is a traditional government function.

25.     Upon information and belief, Dr. Herbert Kloiber has over 30 years experience in the film and television industries. At present, he is Chairman and majority shareholder of Tele-Munchen Gruppe (TMG) + Co. Produktionsgesellschaft VOD.

26.     Upon information and belief, Mel Gibson and long-time producing partner Bruce Davey, are co-owners of Icon Film Distribution Pty Ltd (Australia VOD). They are the key principals behind the independent film company Icon Productions.

27.     Upon information and belief, Robert Allen Iger is chairman (2012 to present) and chief executive officer (CEO – 2005 to present) of The Walt Disney Company. Before working for Disney, Iger served as the president of ABC Television from 1994–95, and as president/COO of Capital Cities/ABC, Inc. from 1995 until Disney's acquisition of the company in 1996.

28.     Plaintiff is informed and believes, and based thereupon alleges, the true names and capacities of Defendants sued as Does/Roes 1 through 10 are unknown to Plaintiff, who therefore sues these Defendants by fictitious names. Doe/Roe Defendants include the employees, agents, servants of the Defendants and each of them, jointly and severally, who directly approved the acts, omissions and policies described herein, as well as agents, officers and employees of the Defendants who are liable in connection with one or more of the claims sued upon here and are responsible in some manner for the wrongful acts and conduct alleged herein. Plaintiff will amend this Complaint to show Doe/Roe Defendants' true names and capacities when they have been ascertained.

29.     Whenever it is alleged in the complaint that any Defendant did any act or thing, it is meant that its Directors, Officers, agents, employees, or the Directors, Officers, agents or employees of its subsidiaries or affiliates, performed or participated in such act or thing, and in each instance that such act or thing was authorized or ratified by, and done on behalf of, that Defendant.

## JURISDICTION & VENUE

30.     This Honorable Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, 1338(b) this being a civil action, which arises under 15 U.S.C. 1125; 42 U.S.C. §§ 1983, 1988; and 17 U.S.C. § 512, Subsection (g)(1).

31.     Personal jurisdiction also exists over the Defendants pursuant to 15 U.S.C. § 22; and **15 U.S.C. 1125 (SECTION 43 OF THE LANHAM ACT)**. **(a)** The Defendants illegally contract, combine, and conspire with persons and entities that have committed, and continue to commit overt acts within California in furtherance of the contract, combination and conspiracy alleged in this Complaint. **(b)** The Defendants' conduct collectively and individually has unlawfully restrained the domestic and foreign commerce of the United States and injured consumers in California, the United States and foreign countries. **(c)** As a result of Defendants' fraudulent and anti-competitive acts, as alleged in this Complaint, consumers and Plaintiff have sustained harm in California.

32.     Plaintiff is informed and believes, and herein allege, that such Doe/Roe Defendants are residents of the United States, the State of California, or have minimal and/or significant contacts with the State of California, to confer this court's jurisdiction.

33.     This Court is an appropriate venue for this cause of action under 28 U.S.C. § 1391 (a)(1)(2); 28 U.S.C. § 1391 (b)(1) because the Defendants and each of them, jointly and severally, are present and regularly conducts business affairs in this judicial district; 28 U.S.C. § 1391 (b)(2) because the act and/or omissions complained of: took place and continue to take place in this judicial district; evidence, business and computer records relevant to the allegations are maintained in this judicial district; 28 U.S.C. § 1391 (b)(3) ([...] any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.); 28 U.S.C. § 1391 (c)(3) ["a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."]; and 28 U.S.C. § 1391 (d) Residency of Corporations in States With Multiple Districts.

34.     Plaintiff is informed and believes, and based thereupon alleges, The Defendants, and each of them, jointly and severally, either on their own or through their agents, are currently found in, and/or transact business within, the State of California (United States), and/or at the time of the commission of the acts alleged hereunder were found in, and/or transacted business

within the State of California (United States), and the cause of action which is the object of this complaint arises out of those business transactions in the State of California (United States).

35.    The Plaintiff further invokes the supplemental jurisdiction of this Court, under 28 U.S.C. § 1332, to hear, adjudicate claims and recover damages, including treble damages, cost of suit, and reasonable attorney fees, against Defendants for injuries sustained by Plaintiff as a result of violations of California Fraud and Unfair Competition Laws (Business & Professions Code, Section 17200, et. seq.) since they are so related to the afore stated federal claims that they all form part of the same case or controversy under Article III of the Constitution of the United States.

36.    Moreover, the Plaintiff is requesting declaratory and injunctive relief. A declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and permanent injunction will guarantee that the Defendants and each of them, jointly and severally, and all associated parties, cease and permanently desist from engaging in illegal dealings in business operations, advertisement revenue programs and violation of constitutional rights as to the Plaintiff and the violation of the applicable laws, statutes and regulations. Such relief will also ensure that other governing bodies do not acquiesce to the Defendants' conduct. The injunctive relief sought is authorized by Federal Rules of Civil Procedure, Rule 65(a)(1)(2).

37.    Pursuant to the Seventh Amendment of the United States Constitution, the Plaintiff demands a trial by jury in the instant case. Fed. R. Civ. P. 38b.

### Factual Allegations[6]

### (a) Plaintiff's Claims Under Federal Law

I.    *Plaintiff's YouTube Channels*

38.    Between the time period October 15, 2008 and November 13, 2013, Plaintiff created two (2) YouTube channels: the "Harry Williby"[7] channel (created November 13, 2013) and "The Attorney Depot™"[8] channel (created October 15, 2008). On October 8, 2008, Plaintiff

---

[6] Unless otherwise specified, the allegations of this complaint are based upon information and belief.
[7] http://www.youtube.com/c/HarryWilliby021269
[8] http://www.youtube.com/c/TheAttorneyDepotTM

also created "The Williby Blogs"[9] on Defendant Alphabet's Blogger Platform. Beginning in 2011, Defendant Alphabet, dba, Google, dba, Google+, dba, Google AdSense (PPC), dba, Blogger, dba, YouTube, LLC., mandated that YouTube channel owners create Google+ accounts to access YouTube. As a direct and proximate result of this mandate by Defendant Alphabet, Plaintiff created two (2) Google+ accounts: "The Harry Williby" Google+ account[10] and "The Attorney Depot™" Google+ account.[11]

39.    Between October 15, 2008 and August 1, 2018, The Attorney Depot™ channel published and hosted Daily, Weekly, Monthly and yearly News, legal news, political, election, trial coverage, documentaries and entertainment videos. Videos hosted on the The Attorney Depot™ YouTube channel were automatically and simultaneously published on The Attorney Depot™ Google+ account. The Plaintiff simultaneously hosted all The Attorney Depot™ videos on Williby Blogs, Twitter and Facebook.

40.    Between October 15, 2008 and August 1, 2018, The Attorney Depot™ YouTube channel garnered over twenty-one million (21,000,000+) global, public, video views; and twenty-one thousand (21,000+) return subscribers. Between October 15, 2008 and August 1, 2018, Plaintiff posted and published Daily, Weekly, Monthly and yearly News, legal news, political, election, trial coverage text and images posts on The Attorney Depot™ Google+. These text, image and video posts numbered approximately 10,000 posts. The Google+ account garnered well over two-million viewers and/or visitors as a direct and proximate result of these videos, text and image posts.

41.    Between October 15, 2008 and August 1, 2018, The Attorney Depot™ Channel and Google+ account produced, globally marketed and branded "trial court coverage"[12] videos on YouTube. The Attorney Depot™ channel averaged 500,000 -to- 1,000,000 million viewers per month. Prior to 2008, few if any, YouTube channels hosted "trial court coverage" videos on YouTube. As a direct and proximate result of a decade of marketing YouTube and The Attorney

---

[9] https://willibys-corruptjustice.blogspot.com/
[10] https://plus.google.com/+HarryWilliby021269
[11] https://plus.google.com/b/114610022579488515977/+TheAttorneyDepotTM
[12] The foundational basis of the The Attorney Depot's "trial court coverage" genre was the Cable News Network (CNN) television genre Court TV, launched in 1991. CNN discontinued the television version of Court TV in 2007. Plaintiff launched The Attorney Depot in 2008.

Depot™ Channel by Plaintiff, virtually every major U.S. media network, including the Defendants, and each of them, jointly and severally, has joined YouTube and now host "trial court coverage" videos.

42.     Between October 8, 2008 and August 1, 2018, Plaintiff's Blogger pages (Williby Blogs) netted 15 – 40,000 viewers per week, with over one-million global readers/viewers.[13]

43.     Between October 15, 2008 and August 1, 2018, The Attorney Depot™ YouTube channel, The Attorney Depot™ Google+ account, Williby Blogs and Plaintiff's Twitter (feed) and Facebook pages were viewed in every country with an Internet connection.

44.     Between and November 13, 2018, and August 1, 2018, The Harry Williby Channel published and hosted Daily, Weekly, Monthly and yearly News, political, election, documentaries, entertainment and raw videos (or videos shot live on scene by the bystander). Between November 13, 2013 and August 1, 2018, "The Harry Williby Channel," publicly displayed approximately eight-hundred and eight-one (881) videos; garnered eighteen-hundred and forty-nine (1,849) return subscribers; and has (had) approximately four million, one Hundred and eighty-seven thousand (plus) viewers (4,187,000+) on the channel. Between November 13, 2013 and August 1, 2018, videos hosted on the The Harry Williby YouTube channel were automatically and simultaneously published on the Harry Williby Google+ account. Between November 13, 2013 and August 1, 2018, The Harry Williby Google+ account  generated approximately 20-25,000,000 million visitors.

45.     The Harry Williby Channel's primary genre was real life interactions, including police interrogations and/or police interactions with civilians. Plaintiff branded raw videos on The Williby Channel as "Streat Beatz™" videos. This genre was so popular on YouTube, The Williby Channel, grossed approximately 1,000,000 (one-million) viewers per year.

II.     *Defendants' Material Misrepresentations (17 U.S.C. § 512, Subsection (f))*

46.     Plaintiff is informed and believes, and based thereupon alleges, that under the Digital Millennium Copyright Act ("DMCA," hereafter) if the party believes [s]he has been

---

[13] Plaintiff is informed and believes that as a direct and proximate result of the August 1, 2018 termination of Plaintiff's YouTube channel, Plaintiff's blogger pages nets approximately 300 views per week.

affected by copyright infringement, under the notice[14] and takedown procedure, "... the copyright owner submits a notification under penalty of perjury, including a list of specified elements, to the service provider's designated agent. If, upon receiving a proper notification, the service provider promptly removes or blocks access to the material identified in the notification, the provider is exempt from monetary liability. In addition, the provider is protected from any liability to any person for claims based on its having taken down the material."[15] (17 U.S.C. § 512(c) *in relevant part.*)

47.    "In order to protect against the possibility of erroneous or fraudulent notifications, certain safeguards are built into section 512. Subsection (g)(1) gives the subscriber the opportunity to respond to the notice and takedown by filing a counter notification. In order to qualify for the protection against liability for taking down material, the service provider must promptly notify the subscriber that it has removed or disabled access to the material. If the subscriber serves a counter notification complying with statutory requirements, including a statement under penalty of perjury that the material was removed or disabled through mistake or misidentification, then unless the copyright owner files an action seeking a court order against the subscriber, the service provider must put the material back up within 10-14 business days after receiving the counter notification." (17 U.S.C. § 512(g)(1) *in relevant part.*)

48.    Plaintiff is informed and believes, and based thereupon alleges, on, or about, July 20, 2018, at approximately 07:27 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "cocheusadoooo," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "cocheusadoooo," even though the video material in question, was not the copyrighted property of "cocheusadoooo." The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection

---

[14] "Failure to comply substantially with the statutory requirements means that the notification will not be considered in determining the requisite level of knowledge by the service provider."

[15] The Online Copyright Infringement Liability Limitation Act, passed into law in 1998 as part of the Digital Millennium Copyright Act provides safe harbour protection to "online service providers" for "online storage" in 17 U.S.C. § 512(c).

(g)(1). Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel, but claimed the video had been restored.

49.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, June 26, 2018, at approximately 12:46 P.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Apple Corps Ltd.," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Apple Corps Ltd.," even though the video material in question, was not all the copyrighted property of "Apple Corps Ltd.," portions of the video material remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff attempted to file a counter notification under 17 U.S.C. § 512, Subsection (g)(1). However, Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel and blocked Plaintiff's access to the counter-notification process under the aforementioned statute. As a direct and proximate result of this knowingly, malicious, false claim of copyright infringement, Plaintiff's YouTube channels "The Attorney Depot™, The Williby Channel" were terminated and Plaintiff has been denied access to his Google+ Account, "The Attorney Depot™."

50.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, June 18, 2018, at approximately 08:48 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Lasso Entertainment," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Lasso Entertainment," even though the video material in question, was not the copyrighted property of "Lasso Entertainment" and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized, plaintiff lost and was denied advertisement revenue. The video was removed and Plaintiff's channel was penalized. Plaintiff attempted to file a counter notification under 17 U.S.C. § 512, Subsection (g)(1). However, Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel and blocked Plaintiff's access to the counter-notification process under the aforementioned statute. As a direct and proximate result of this knowingly, malicious,

false claim of copyright infringement, Plaintiff's YouTube channels "The Attorney Depot™, The Williby Channel" were terminated and Plaintiff has been denied access to his Google+ Account, "The Attorney Depot™."

51.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, June 18, 2018, at approximately 08:48 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Live Storms Media," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Live Storms Media," even though the video material in question, was not the copyrighted property of "Live Storms Media" and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). Defendant Alphabet, dba, Google, dba, YouTube, restored the video, but two weeks later terminated Plaintiff's YouTube channel and blocked Plaintiff's access to the counter-notification process under the aforementioned statute.

52.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, June 11, 2018, at approximately 07:34 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Zefr SonyPictures," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Zefr SonyPictures," even though the video material in question, was not all the copyrighted property of "Zefr SonyPictures," and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff attempted to file a counter notification under 17 U.S.C. § 512, Subsection (g) (1). However, Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel and blocked Plaintiff's access to the counter-notification process under the aforementioned statute.

53.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, June 5, 2018, at approximately 12:36 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Viacom, dba, Paramount Pictures," a YouTube channel owner, via

electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Viacom, dba, Paramount Pictures," even though the video material in question, was not all the copyrighted property of "Viacom, dba, Paramount Pictures," and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff attempted to file a counter notification under 17 U.S.C. § 512, Subsection (g)(1). However, Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel and blocked Plaintiff's access to the counter-notification process under the aforementioned statute.

54.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, June 5, 2018, at approximately 12:35 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Tele München Fernseh GmbH + Co. Produktionsgesellschaft VOD (TMG)" a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Tele München Fernseh GmbH + Co. Produktionsgesellschaft VOD (TMG)," even though the video material in question, was not all the copyrighted property of "Tele München Fernseh GmbH + Co. Produktionsgesellschaft VOD (TMG)," and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff attempted to file a counter notification under 17 U.S.C. § 512, Subsection (g)(1). However, Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel and blocked Plaintiff's access to the counter-notification process under the aforementioned statute. As a direct and proximate result of this knowingly, malicious, false claim of copyright infringement, Plaintiff's YouTube channels "The Attorney Depot™, The Williby Channel" were terminated and Plaintiff has been denied access to his Google+ Account, "The Attorney Depot™."

55.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, June 5, 2018, at approximately 12:35 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Icon Film Distribution Pty Ltd (Australia VOD)" a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Icon Film Distribution

Pty Ltd (Australia VOD)," even though the video material in question, was not all the copyrighted property of "Icon Film Distribution Pty Ltd (Australia VOD)," and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff attempted to file a counter notification under 17 U.S.C. § 512, Subsection (g)(1). However, Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel and blocked Plaintiff's access to the counter-notification process under the aforementioned statute. As a direct and proximate result of this knowingly, malicious, false claim of copyright infringement, Plaintiff's YouTube channels "The Attorney Depot™, The Williby Channel" were terminated and Plaintiff has been denied access to his Google+ Account, "The Attorney Depot™."

56.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, June 5, 2018, at approximately 12:35 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with the "Walt Disney Company" a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of the "Walt Disney Company," even though the video material in question, was not all the copyrighted property of the "Walt Disney Company," and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff attempted to file a counter notification under 17 U.S.C. § 512, Subsection (g) (1). However, Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel and blocked Plaintiff's access to the counter-notification process under the aforementioned statute. As a direct and proximate result of this knowingly, malicious, false claim of copyright infringement, Plaintiff's YouTube channels "The Attorney Depot™, The Williby Channel" were terminated and Plaintiff has been denied access to his Google+ Account, "The Attorney Depot™."

57.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, May 10, 2017, at approximately 10:09 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with Brian M. Heiss, a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of

infringing upon the copyrights of Heiss, even though the video material in question, remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff attempted to file a counter notification under 17 U.S.C. § 512, Subsection (g)(1). However, Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel and blocked Plaintiff's access to the counter-notification process under the aforementioned statute.

58. Plaintiff is informed and believes, and based thereupon alleges, on, or about, March 31, 2017, at approximately 11:20 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with Jean-Xavier de Lestrade, a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of Jean-Xavier de Lestrade, even though the video material in question, remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). However, Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel and blocked Plaintiff's access to the counter-notification process under the aforementioned statute. Plaintiff's channel was later restored. However, Plaintiff remained blocked from the counter-notification process. Plaintiff later learned that the video in question "Murder on a Sunday Morning," was being sold and rented on Amazon.

59. Plaintiff is informed and believes, and based thereupon alleges, on, or about, March 17, 2017, at approximately 10:54 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with Hearst Television Inc., a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of Hearst Television Inc., even though the video material in question, remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). Plaintiff's channel and the video were later

restored. However, Plaintiff's YouTube channels were later terminated, "Due to multiple claims of copyright infringement."

60.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, November 19, 2016, at approximately 12:45 P.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "VideoVigilanteOKC," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "VideoVigilanteOKC," even though the video material in question, remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). Plaintiff's video, "The Daniel Holtzclaw Police Interrogation" was later restored. However, Plaintiff's YouTube channels were later terminated, "Due to multiple claims of copyright infringement."

61.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, July 4, 2016, at approximately 08:36 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Content Media Corporation International Limited," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Content Media Corporation International Limited," even though the video material in question, remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). Plaintiff's video was later restored. However, Plaintiff's YouTube channels were later terminated, "Due to multiple claims of copyright infringement."

62.     Plaintiff is informed and believes, and based thereupon alleges, on, or about, July 24, 2015, at approximately 03:46 P.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Robert Schmidt," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Robert Schmidt," even though the video material

in question, was not the copyrighted property of "Robert Schmidt," and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). Plaintiff's video was later restored. However, Plaintiff's YouTube channels were later terminated, "Due to multiple claims of copyright infringement."

63.   Plaintiff is informed and believes, and based thereupon alleges, on, or about, June 29, 2015, at approximately 02:12 P.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Remove Your Media LLC," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Remove Your Media LLC," even though the video material in question, was not the copyrighted property of "Remove Your Media LLC," and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). Plaintiff's video was later restored. However, Plaintiff's YouTube channels were later terminated, "Due to multiple claims of copyright infringement."

64.   Plaintiff is informed and believes, and based thereupon alleges, on, or about, May 7, 2015, at approximately 03:09 P.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Hearst Television Inc.," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Hearst Television Inc.," even though the video material in question, was not the copyrighted property of "Hearst Television Inc.," remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). Plaintiff's video was later restored. However, Plaintiff's YouTube channels were later terminated, "Due to multiple claims of copyright infringement."

65.   Plaintiff is informed and believes, and based thereupon alleges, on, or about, April 15, 2015, at approximately 07:58 P.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Hearst Television Inc.," a YouTube channel owner, via electronic mail, and,

acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Hearst Television Inc.," even though the video material in question, was not the copyrighted property of "Hearst Television Inc.," remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). Plaintiff's video was later restored. However, Plaintiff's YouTube channels were later terminated, "Due to multiple claims of copyright infringement."

66.    Plaintiff is informed and believes, and based thereupon alleges, on, or about, March 6, 2015, at approximately 08:10 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "John Nicholas Broomfield," a documentary producer, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "John Nicholas Broomfield," even though the video material in question, was not the copyrighted property of "John Nicholas Broomfield," remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff attempted to file a counter notification under 17 U.S.C. § 512, Subsection (g)(1). However, Defendant Alphabet, dba, Google, dba, YouTube, terminated Plaintiff's YouTube channel. Plaintiff's channel and video, "Aileen Wournos: Life and Death of A Serial Killer," were later restored. However, the video was again removed (under a Notice and Takedown) and Plaintiff's access to the counter-notification process was blocked under the aforementioned statute. Plaintiff later learned the video was being rented and sold on Amazon.

67.    Plaintiff is informed and believes, and based thereupon alleges, on, or about, August 4, 2014, at approximately 10:12 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Hearst Television Inc.," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Hearst Television Inc.," even though the video material in question, was not the copyrighted property of "Hearst Television Inc.," remains in the

public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized.

68.    Plaintiff is informed and believes, and based thereupon alleges, on, or about, August 4, 2014, at approximately 07:05 A.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Hearst Television Inc.," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Hearst Television Inc.," even though the video material in question, was not the copyrighted property of "Hearst Television Inc.," remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). Plaintiff's video was later restored. However, Plaintiff's YouTube channels were later terminated, "Due to multiple claims of copyright infringement."

69.    Plaintiff is informed and believes, and based thereupon alleges, on, or about, April 15, 2015, at approximately 07:58 P.M., Defendant Alphabet, dba, Google, dba, YouTube, communicated with "Hearst Television Inc.," a YouTube channel owner, via electronic mail, and, acting in concert, jointly, aiding and abetting and conspiring with each other, they accused Plaintiff of infringing upon the copyrights of "Hearst Television Inc.," even though the video material in question, was not the copyrighted property of "Hearst Television Inc.," remains in the public domain and was subject to "fair use," under federal law. The video was removed and Plaintiff's channel was penalized. Plaintiff filed a counter notification under 17 U.S.C. § 512, Subsection (g)(1). Plaintiff's video was later restored. However, Plaintiff's YouTube channels were later terminated, "Due to multiple claims of copyright infringement."

70.    Between the time period of October 15, 2008 and August 1, 2018, Plaintiff informed the Defendants, and each of them, jointly and severally, that videos posted on his YouTube Channels were material in the Public Domain and not subject to United States Copyright Law, or posted under statutory "fair use" law(s). However, upon information and belief, Defendants, and each of them, jointly and severally, intentionally disregarded, or were

willfully blind to numerous notifications from Plaintiff regarding his "fair use"[16] of the videos in question. In addition, upon information and belief, the Defendants, and each of them, jointly and severally, continue at present, the assertion of copyright ownership of works in the Public Domain.

71.     Between the same time period of October 15, 2008 and August 1, 2018, and upon information and belief, Defendants, and each of them, jointly and severally, knowingly, willingly and maliciously made numerous fraudulent, material misrepresentations, alleging copyright infringement against Plaintiff's YouTube channels. At no time during this time period, did either Defendant file a civil action in court against the Plaintiff, alleging copyright infringement as required by statute. Title 17 U.S.C. § 512, Subsection (g)(1) holds in relevant part: "… unless the copyright owner files an action seeking a court order against the subscriber, the service provider must put the material back up within 10-14 business days after receiving the counter notification."

72.     Plaintiff is informed and believes, and based thereupon alleges that as a direct and proximate result of the foregoing allegations of copyright infringement, on August 1, 2018, both Plaintiff's YouTube channels were terminated. Plaintiff has since been prohibited from accessing either YouTube channel. Plaintiff is informed and believes, and based thereupon alleges that as a direct and proximate result of allegations of copyright infringement, by defendants, and each of them, jointly and severally, and Defendant Alphabet's termination of Plaintiff's YouTube channels, the foregoing sites managed by plaintiff and viewed by millions of viewers and readers, … worldwide have been irreparably damaged.

73.     Plaintiff is informed and believes, and based thereupon alleges that as a direct and proximate result of allegations of copyright infringement,[17] by defendants, and each of them,

---

[16] Upon information and belief, Defendant Google's General Counsel, Kent Walker, lobbied New Zealand's Commerce Minister Kris Faafoi on July 30, 2018, to loosen New Zealand's copyright law. Upon information and belief, Documents released under the Official Information Act appear to confirm the meeting and lobbying efforts by Counsel Walker. Upon information and belief, notes taken by New Zealand's Ministry of Business, Innovation and Employment (MBIE) officials of his meeting with Faafoi indicate Walker lobbied for "fair use type provisions" within the Copyright Act, suggesting the exact details of what would or wouldn't be allowed under the law could be left to the courts.

[17] Upon information and belief, Defendant Google asserted misuse of the DMCA in a filing concerning New Zealand's copyright act. Upon information and belief, Defendant Google quot[ed] results from a 2005 study by California academics Laura Quilter and Jennifer Urban. Upon information and belief, the study was based on data

jointly and severally, Defendant Alphabet has terminated Plaintiff's YouTube channels and Plaintiff's Google+ accounts three (3) times between the time period of October 15, 2008 and August 1, 2018.

74.     Thus, Plaintiff is informed and believes, and based thereupon alleges, as a direct and proximate result of the Defendants' material misrepresentations, executed from the time period of 2008 through 2018, Plaintiff has been damaged, according to proof at trial.

III.   *Defendants' Invitation to Use YouTube, LLC., As A Public Forum (1st Amendment)*[18]

75.     Plaintiff is informed and believes, and based thereupon alleges, between October 15, 2008 August 1, 2018, Defendant Alphabet, dba, Google, dba, YouTube, invited, allowed and supported (now) Former President Barack Obama[19] to campaign, raise funds and secure votes and voters, via Obama's YouTube channel(s) Obamadotcom (pre-election channel);[20] The Obama White House (President's Channel);[21] and The Obama Foundation (Presidency & Post-Presidential Channel).[22] Plaintiff is informed and believes, and based thereupon alleges, on Apr 15, 2010, the United States Court[23] of Appeals for the Ninth Circuit created its YouTube Channel.[24] Plaintiff is informed and believes, and based thereupon alleges, on March 16, 2015, President Donald Trump created his YouTube channel, titled, "Donald J. Trump for President: This is the official YouTube Channel for Donald J. Trump."[25] Plaintiff is informed and believes, and based thereupon alleges, The United States Senate is live-streamed across YouTube, every time the Senate is in session. Plaintiff is further informed and believes, and based thereupon alleges, that at present, political candidates and elected officials (of both major parties and across

---

from the Chilling Effects clearinghouse. Upon information and belief, Defendant Google argued that "takedown notices" targeting a competing business made up over half (57%) of the notices Google has received. Upon further information and belief, Defendant Google argued that more than one-third (37%), "were not valid copyright claims."
[18] The First Amendment right to criticize public officials is well-established and supported by ample case law; a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of 42 U.S.C. § 1983.
[19] See YouTube video of (then) President Obama at https://www.youtube.com/watch?v=ODVxuN6m6E8
[20] See YouTube Channel, Obamadotcom @ https://www.youtube.com/user/BarackObamadotcom
[21] See YouTube Channel, Obama White House @
https://www.youtube.com/channel/UCDGknzyQfNiThyt4vg4MlTQ
[22] See YouTube Channel of Obama foundation at https://www.youtube.com/channel/UCiaba-DmYJacphj7r7Knrwg
[23] This court, as well as the Central District also owns YouTube Channels on YouTube.
[24] See YouTube Channel of 9th Cir. @ https://www.youtube.com/user/9thcirc/
[25] See YouTube Channel Donald Trump @ https://www.youtube.com/channel/UCAgl2DyGU2un1Ei2nMYsqOA

the Nation) are actively campaigning on YouTube, for elected office and re-election. In addition, Plaintiff is informed and believes that all three branches of the U.S. Government conducts their daily, public affairs on YouTube. Thus, Plaintiff is informed and believes, and based thereupon alleges, Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., has knowingly, willingly and intentionally dedicated its "private property [for] public [Free Speech] use."

76.   Plaintiff is informed and believes, and based thereupon alleges, that during this same time period, 2008 through 2018, Defendant Alphabet has knowingly, willingly and intentionally allowed the live-streaming of arraignments, hearings, and criminals trials, including verdict readings. Thus, Plaintiff is informed and believes, and based thereupon alleges, Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., has knowingly, willingly and intentionally dedicated its "private property [for] public [Free Speech] use."

77.   Plaintiff is informed and believes, and based thereupon alleges, that Google employees emerged as the No. 2 donors to the Democratic National Committee in the 2008 election. Upon information and belief, employees <u>and the company's political action committee</u> gave $1.6 million to Democrats in the 2008 presidential election. Upon information and belief, Google hosted multiple fund raising events for former President Barack Obama. Upon information and belief, Google's fund-raising executives for Obama's Presidential campaign included Susan Wojcicki and Marissa Mayer.[26] Upon information and belief, Schmidt and other Google executives forked over $25,000 apiece to help pay for the inaugural celebration. Upon information and belief, Google Chief executive, Page, also wrote a check to help pay for Obama's inauguration. Upon information and belief, Google co-founder Brin, donated $30,800 to the Democratic Party in 2011. Thus, Plaintiff is informed and believes, and based thereupon

---

[26] Upon information and belief, Mayer joined Google in 1999 as employee number 20. She started out writing code and overseeing small teams of engineers, developing and designing Google's search offerings. She became known for her attention to detail, which helped land her a promotion to product manager, and later she became director of consumer web products. She oversaw the layout of Google's well-known, unadorned search homepage. She was also on the three-person team responsible for Google AdWords, which is an advertising platform that allows businesses to show their product to relevant potential customers based on their search terms. AdWords helped deliver 96% of the company's revenue in the first quarter of 2011. Mayer was the vice president of Google Search Products and User Experience until the end of 2010, when she was asked by then-CEO Eric Schmidt to head the Local, Maps, and Location Services. In 2011, she secured Google's acquisition of survey site Zagat for $125 million. On July 16, 2012, Mayer was appointed president and CEO of Yahoo!, effective the following day.

alleges, Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., has knowingly, willingly and intentionally dedicated its "private property [for] public [Free Speech] use."

78.    Upon information and belief, Obama told Google employees during a 2007 visit to Google's headquarters in Mountain View, California: "What we shared is a belief in changing the world from the bottom up, not from the top down." Upon information and belief, In 2008, Google's climate director, Dan Reicher, exhorted an audience at the Democratic National Convention to "get out the vote and let's get Barack Obama elected in November!" Upon information and belief, Schmidt, the Executive Chairman of Google, campaigned for Obama (in the 2008 and 2012 election). Upon information and belief, Schmidt, was publicly described as a "kind of guru" to President Obama's campaign manager. Upon information and belief, Schmidt also served as an informal economic adviser during the Obama campaign, and after Obama was elected. Upon information and belief, Google executives soon found themselves assuming roles in the Obama administration. Upon information and belief, Schmidt was a member of Obama's Council of Science and Technology Advisers. Upon information and belief, Google employees acted as advisers to the Obama transition team. Upon information and belief, Google executive Sonal Shah actually led a meeting, to the surprise of at least one attendee. Thus, Plaintiff is informed and believes, and based thereupon alleges that Defendant Alphabet, dba, Google, dba, YouTube, LLC., are state actors under the "public function test; the joint action test;" and have knowingly, willingly and intentionally dedicated its "private property [for] public [Free Speech] use."

79.    Upon information and belief, a handful of "ex-Google employees" joined the Obama administration in various roles. Upon information and belief, Google's former head of global public policy, Andrew McLaughlin, was named deputy chief technology officer in Obama's administration. Upon information and belief, In his role at Google, McLaughlin championed Google's policy goals. Upon information and belief, President Obama then appointed McLaughlin to a position in his administration that shaped policy that affected Google's rivals. Upon information and belief, as of 2008, Google retained a policy staff of about 20 people. Upon information and belief, these people included a former member of

Representative Spencer Bachus's (R-Ala.) staff. Upon information and belief, this person was hired to improve Google ties to the GOP Republican Party. Upon information and belief, a top telecom aide was hired from Sen. Byron Dorgan's (D-N.D.) staff. Thus, Plaintiff is informed and believes, and based thereupon alleges that Defendant Alphabet, dba, Google, dba, YouTube, LLC., are state actors under the "public function test; the joint action test;" and have knowingly, willingly and intentionally dedicated its "private property [for] public [Free Speech] use."

80.     Plaintiff is informed and believes, and based thereupon alleges that <u>Vivek Kundra served as technology adviser on President Barack Obama's transition team</u>. Upon information and belief, Kundra was officially named to the post of Federal Chief Information Officer (he oversees the government's tech spending) by President Obama on March 5, 2009. Plaintiff is informed and believes, and based thereupon alleges that in September of 2009, an event was held at NASA's Ames Research Center in Mountain View. Upon information and belief, Kundra announced a new site that lets federal agencies buy applications that run on the Internet (known as cloud computing) instead of installing software on their computers. Upon information and belief, <u>Brin attended and said Google was launching a "government cloud" data center specifically designed for government agencies</u>. Plaintiff is informed and believes, and based thereupon alleges that in same year a new report on the future of the Internet and information was commissioned by the Knight Foundation and the Aspen Institute. Upon information and belief, the co-chairwoman of the commission was Defendant Google's, Vice President Marissa Mayer. Plaintiff is informed and believes, and based thereupon alleges that Mayer was the sole author of the report. Upon information and belief, the report called for greater broadband deployments and "open-access policies." Plaintiff is informed and believes, and based thereupon alleges that Obama's FCC chairman Julius Genachowski and the administration's chief technology officer, Aneesh Chopra, praised the report. Upon information and belief, <u>Genachowski and Chopra both said the paper would guide Obama's Internet policy</u>.[27] Thus, Plaintiff is informed and believes, and based thereupon alleges that Defendant Alphabet, dba,

---

[27] Upon information and belief, Obama and his tech regulators, including Genachowski, had long supported one of Google's top policy priorities: codifying "Net neutrality," or rules that prohibit network providers like AT&T, Verizon, and the cable operators from prioritizing traffic and content that run on their networks.

Google, dba, YouTube, LLC., are state actors under the "joint action test" and have knowingly, willingly and intentionally dedicated their "private property [for] public [Free Speech] use."

81.     Plaintiff is informed and believes, and based thereupon alleges that on four separate occasions after entering the White House, Obama held up Brin, explicitly or implicitly, as an immigrant par excellence. Upon information and belief, on July 1, 2010, Obama called "Sergey Brin's Google" one of the "great ventures" that was made "possible because of immigrants." Upon information and belief, on May 10, 2011, Obama referred to Google as a "great American company" that "created countless jobs" and was founded by an immigrant. Upon information and belief, on July 25, 2011, Obama highlighted Google's founder as an example of the "job creators who came here to seek opportunity and now seek to share opportunity." Upon information and belief, and, finally, [...] Obama said that "immigrants helped start businesses like Google," creating "new jobs and new prosperity for our citizens." Thus, Plaintiff is informed and believes, and based thereupon alleges, Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., has knowingly, willingly and intentionally dedicated its "private property [for] public [Free Speech] use."

82.     Plaintiff is informed and believes, and based thereupon alleges that Google executives reacted to the election of Donald Trump in their first staff meeting following President Trump's win. Upon information and belief, Google's top executives, Page, Brin and Pichai, were all in attendance. Upon information and belief, Brin told the audience: "As an immigrant and a refugee, I certainly find this election deeply offensive, and I know many of you do too." Upon information and belief, Brin also said Trump's win "conflicts with many of our values." Upon information and belief, Brin was followed up by Pichai, CEO of Google, Inc.,[28] who continues to discuss the election and ways Google can influence future elections. Upon information and belief, Pichai was followed by another Google executive identified as Ken (starting at 00:07:01), who explains how Google "... builds to help people communicate." Upon

---

[28] A number of companies on Monday, September 4, 2017, condemned Donald Trump administration's decision to end a program preventing the deportation of immigrants illegally brought to the US as children. A group known as Dreamers. On September 4, 2017, Alphabet Inc.'s, Google chief executive officer, Sundar Pichai tweeted: "Dreamers are our neighbors, our friends and our co-workers. This is their home. Congress needs to act now to #DefendDACA. #WithDreamers"

information and belief, Ken states at 00:11:17 thru 00:11:37 of the video: "<u>Google is a trusted source of information around the world.</u>" Upon information and belief, Ken is followed by another Google executive, identified as Ruth, starting at 00:12:34 of the video. Upon information and belief, Ruth immediately identifies herself as a "Hillary supporter."[29] Upon information and belief, at 00:13:19 of the video, Ruth discusses how she was in communication with a Hillary Clinton, presidential campaign worker, on the night of the election. Upon information and belief, and at 00:15:10 through 00:15:130 of the video, Ruth states how Google will continue to "<u>use their strength and massive resources</u>"[30] to advance the values held by Google employees. Upon information and belief, Ruth is followed by another Google executive, starting at 00:17:30 of the video. Upon information and belief, the executive identifies herself as Aline and leader of People Operations at Google. Upon information and belief, between 00:17:30 through 00:20:39 of the video, Aline discusses the impact of the Trump Presidency Policies on Google employees who are immigrants. Aline states that Google's "Policy Office" in Washington "is all over it [the immigration issue]." Upon information and belief, Aline continues at 00:21:08 of the video stating: "<u>We have also taken the position for the past ten years with the U.S. government to fix what is a very broken immigration system in the country, and we are going to continue to take that fight forward.</u>"[31] Thus, Plaintiff is informed and believes, and based thereupon alleges, Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., knowingly, willingly and intentionally dedicated its "private property [for] public [Free Speech] use."

83.    Plaintiff is informed and believes, and based thereupon alleges, that In June of 2015, President Donald J. Trump formally announced his candidacy for President. Upon information and belief, Trump made this announcement in a speech delivered from Trump Tower in New York City. Upon information and belief, Defendant Hearst severed ties with the Trump because of disparaging comments he made about Mexicans in the speech announcing his candidacy. Exercising his rights under the First Amendment to the United States Constitution and prior to Trump becoming the G.O.P.'s nominee, Plaintiff formally endorsed President Trump on

---

[29] President Barack Obama formally endorsed Hillary Rodham Clinton for President of the United States.
[30] As of October 2016, Google operates 70 offices in more than 40 countries.
[31] Plaintiff has a copy of the video and upon proper authentication, plaintiff intends to introduce the video into evidence herein.

all of Plaintiff's social media sites. Plaintiff, utilizing his YouTube Channels, Blogger[32] sites, Facebook and Twitter accounts, formally endorsed, campaigned and supported Trump as President. Plaintiff was the only national and global media organization that supported Trump as President. Trump was elected on Tuesday, November 8, 2016. Thus, Plaintiff is informed and believes, and based thereupon alleges, Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., knowingly, willingly and intentionally dedicated its "private property [for] public [Free Speech] use."

84.     Plaintiff is informed and believes, and based thereupon alleges, Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., effective August 1, 2018, terminated Plaintiff's YouTube channels, The "Williby Channel" and "The Attorney Depot™ Channel." Upon information and belief, Plaintiff was denied access to his Google+, "The Attorney Depot™ page," effective August 1, 2018. Upon information and belief, Plaintiff was granted access back to his Google+, "The Attorney Depot™ page," effective October 12, 2018, after Defendant Alphabet removed approximately 7,000-to-10,000 posts, placed there by Plaintiff. Plaintiff is further informed and believes, and based thereupon alleges, Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., knowingly, willingly and intentionally and maliciously terminated the above accounts to prevent Plaintiff from engaging in coverage of the 2018 mid-term elections, or express media support for Trump supported candidates. Plaintiff is informed and believes, and based thereupon alleges, Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., knowingly, willingly, intentionally and maliciously retaliated against Plaintiff for exercising his rights to support President Trump on Plaintiff's web-based platforms, owned by Defendant Alphabet, Inc.

85.     Thus, Plaintiff is informed and believes, and based thereupon alleges, as a direct and proximate result of the Defendant Alphabet's violation of his First Amendment Rights and retaliation for the exercise thereof, and executed from the time period of 2008 through 2018, Plaintiff has been damaged, according to proof at trial.

IV.     *Defendant Alphabet's False Advertising under the Lanham Act*

---

[32] Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, Google AdSense (PPC) has restricted advertisement on the Williby blogs due to factual articles and factual videos critical of government officials.

86.     Upon information and belief, the Google AdSense, Pay-Per-Click, (PPC)[33] is a program run by Defendant Alphabet, dba, Google. Defendants launched AdSense (PPC) on June 18, 2003. Upon further information and belief, the AdSense program is a Pay-Per-Click advertising program.[34] AdSense (PPC) allows publishers in the Google Network of content sites to serve automatic text, image, video, or interactive media advertisements, that are targeted to site content and audience. Customers purchase an "ad spend account" with Defendants to have these automatic text, image, video, or interactive media advertisements, placed on sites owned by the plaintiff. These advertisements are administered, sorted, and maintained by Defendant Google. Defendant Alphabet, dba, Google owns all of the platforms that the PPC ads are placed upon.

87.     In October 2008, Plaintiff was informed and led to believe, by Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., by way of electronic advertisement, that if he created a blogger website, or a YouTube channel, Plaintiff could serve Advertisements, under Defendant's AdSense, PPC program. Plaintiff was informed and led to believe, by Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., that he would receive $0.25 (cents) each time a site visitor clicked on one of the Advertisements, hosted by Plaintiff and served by Defendant. Plaintiff relied upon this electronic advertisement and In October of 2008, Plaintiff created "The Williby Blogs," (https://willibys-corruptjustice.blogspot.com/); and "The Attorney Depot™ Channel" (https://www.YouTube.com/channel/UCPBu0JFPj9R57SyjfCxHvmw).

88.     Acting upon this same information and belief, as provided by Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., Plaintiff created The "Williby Channel" (https://www.YouTube.com/c/HarryWilliby021269) in November of 2013, in an attempt to increase Ad revenue by hosting automatic text, image, video, or interactive media

---

[33] In Free Range Content, Inc. v. Google Inc., No. 5:14-cv-02329 (BLF) Plaintiffs challenged the "Terms and Conditions" of the Google AdSense Program as unconscionable. The court held: "Thus, the Court finds that Plaintiffs have sufficiently alleged at least a degree of procedural unconscionability. See Bridge Fund, 622 F.3d at 1004. (At page 12) [¶] [...] the Court finds that Plaintiffs have sufficiently alleged substantive unconscionability." (At Page 14.)

[34] As set forth below in the unfair & unlawful business practices section, Google purchased the AdSense program in 2003, for "Applied Semantics." The Google "AdSense (PPC), PPC" program requires the advertisement customer to pay for the advertisement, only if an advertisement consumer clicks on the advertisement. This constitutes free advertisement provided by Defendant Alphabet, … who owns all on-line advertisement companies and web platforms. Thus, other advertising companies have no chance of selling advertisement on the Internet.

advertisements, served by Defendants. Acting upon this same information and belief, as provided by Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., Plaintiff intentionally hyperlinked directly to, and served videos and blog posts on the following websites (created, managed and operated by Plaintiff):

(I)    Harry Williby Google+ profile (https://plus.google.com/+HarryWilliby021269);

(II)   Harry Williby @ Twitter (https://twitter.com/wilabee)

(III)  The Attorney Depot™ @ Twitter (https://twitter.com/AttorneyDepot);

(IV)   The Attorney Depot™ Google+ profile (https://plus.google.com/+TheAttorneyDepotTM);

(V)    Facebook (Harry Williby) (https://www.facebook.com/harry.williby);

(VI)   Facebook (Harry J. Williby); (https://www.facebook.com/Harry.J.Williby) and

(VII)  Facebook Pages (Corrupt Justice; The Attorney Depot; and Streat Beatz).

89.    Plaintiff is informed and led to believe, by Defendant Alphabet, dba, Google, LLC., dba, Youtube, LLC., that between October 8, 2008 and August 1, 2018, Plaintiff's Blogger pages (Williby Blogs) netted 15,000 – 40,000 viewers per week, with over one-million global readers/viewers. Upon further information and belief, between October 15, 2008 and August 1, 2018, The Attorney Depot™ YouTube channel garnered over twenty-one million (21,000,000+) global, public, video views; and twenty-one thousand (21,000+) return subscribers. Upon this same information and belief, between November 13, 2013 and August 1, 2018, "The Harry Williby Channel," publicly displayed approximately eight-hundred and eight-one (881) videos; garnered eighteen-hundred and forty-nine (1,849) return subscribers; and has (had) approximately four million, one Hundred and eighty-seven thousand (plus) viewers (4,187,000+) on the channel. Upon information and belief, between October 8, 2008 and August 1, 2018, The Attorney Depot™ Google+ page generated approximately 350,000 page visits; and between November 13, 2013 and August 1, 2018, The Harry Williby Google+ account generated approximately 20-25,000,000 million visitors/readers/viewers.[35]

[35] Between between October 8, 2008 and August 1, 2018, videos hosted on the The Attorney Depot™ YouTube channel were automatically and simultaneously published on The Attorney Depot™ Google+ page; and between November 13, 2013 and August 1, 2018, videos hosted on the The Harry Williby YouTube channel were automatically and simultaneously published on the Harry Williby Google+ account.

90.     Plaintiff is further informed and believes, and based thereupon alleges Defendant Alphabet, dba, YouTube's site is a popular site for music and music videos.[36] Upon information and belief, Defendant Alphabet, dba, Google, LLC., dba, Google, AdSense (PPC) serves AdSense advertisements on these music videos. Upon information and belief, and between the time period of October 15, 2008 and August 1, 2018, Defendant Alphabet, dba, Google, dba YouTube, informed plaintiff that music on the YouTube website could be downloaded for free.

91.     Defendants also informed Plaintiff, and led him to believe, that said downloaded music, could not only be downloaded for free, but could be used by the Plaintiff on videos uploaded by Plaintiff to The Williby Channel and The Attorney Depot™ Channel, without risk of copyright claims. Acting upon information and belief, Plaintiff relied upon these music based advertisements placed by Defendant YouTube. Upon further information and belief, a multitude of music copyright owners did in fact file music copyright claims against The Williby Channel and The Attorney Depot™ Channel for the use of this music as provided by Defendant YouTube.

92.     Upon information and belief, and as a direct and proximate result of these music copyright claims against The Williby Channel and The Attorney Depot™ Channel, Defendant Alphabet, dba, Google, dba YouTube, required Plaintiff to publicly acknowledge and/or admit the music copyright claim violations. Thus, Plaintiff is informed and believes his reputation has been, and continues to be injured, globally, as a direct and proximate result of Defendants' false advertisement of free music and their requirement that Plaintiff publicly acknowledge and admit copyright infringement for relying on the advertisements of free music downloads and usage of said music on his channels. Upon further information and belief, Defendant Alphabet, dba, YouTube, LLC., then allowed the music copyright owners to generate AdSense revenue from The Williby Channel and The Attorney Depot™ Channel, while denying and preventing Plaintiff from earning, or generating AdSense revenue. Upon the same information and belief, Defendant Alphabet claimed The Attorney Depot™ Channel was ineligible for monetization, "due to multiple claims of copyright infringement," and that The Williby Channel was terminated "due to multiple claims of copyright infringement," and The Attorney Depot™ Channel was

---

[36] Defendant Google replaced Google Play Music with YouTube Remix. YouTube Remix is a music service that's fully integrated with YouTube.

terminated for being hyper-linked to a channel with "multiple claims of copyright infringement."
Thus, upon information and belief, Plaintiff's YouTube channels were terminated, as a direct and
proximate result of Plaintiff's reliance, upon the false advertisements of Defendant Alphabet,
dba, Google, LLC., dba, YouTube, LLC., and Plaintiff was denied and/or prevented from
generating ad revenue.

93.    In the same year, 2008, Plaintiff, acting upon information and belief in
Defendants' advertisement capabilities, Plaintiff initiated and advertised an independent
advertisement program on Williby Blogs, and "The Attorney Depot™ Channel." In 2013,
Plaintiff extended this independent advertisement campaign to "The Williby Channel." Plaintiff
is informed and believes, and based thereupon alleges, that as a direct and proximate result of
Defendant Alphabet's false advertising of free music downloads and copyright free usage; and
Plaintiff's reliance on said false advertising, Plaintiff was injured in his reputation and ability to
generate ad revenue under his independent advertisement campaigns.

94.    Upon information and belief, and between October 15, 2008 and August 1, 2018,
and as a direct and proximate result of their false advertising, The Attorney Depot™ generated
**$0.00** in AdSense (PPC) revenue; and Plaintiff's independent advertising programs netted **$0.00**
in advertisement revenue.[37] Upon the same information and belief, and between November 11,
2013 and August 1, 2018 Defendant Alphabet paid "The Williby Channel" and "Williby Blogs" a
combined amount of approximately **$2,450.00** in AdSense (PPC) revenue. Thus, Plaintiff is
informed and believes, and based thereupon alleges, in multiple instances between October 15,
2008 and August 1, 2018, Defendant Alphabet paid plaintiff $0.01 for an entire month, under the
AdSense PPC program. As such, Plaintiff is informed and believes, and based thereupon alleges,
that as a direct and proximate result of the false advertisement programs created and operated by
Defendant Alphabet, Plaintiff's commercial interest in generating Advertisement revenue has
been and continues to be egregiously injured.

95.    Plaintiff is informed and believes, Defendant Alphabet, dba, Google, LLC., dba,
Youtube, LLC., dba, Google "AdSense (PPC)," requires customer to purchase an "ad spend

---

[37] The Lanham Act itself provides a detailed statement of the statute's purposes in 15 U.S.C. § 1127, including the
Act's goal to protect persons engaged in commerce against unfair competition.

account" with Defendants to have these automatic text, image, video, or interactive media advertisements, that are hosted and served on Plaintiff's websites. Upon information and belief, these ads are specifically targeted to site content and audience. Upon information and belief, Defendant Alphabet charges all advertising customers $0.10 - $0.30 for the placement of "bumper," or "non-skippable" advertisement on websites and videos owned by Plaintiff. Plaintiff is uninformed, but believes the Defendant Alphabet charges fees in an unknown amount to advertisement customers and place "ad units" on Plaintiff's videos, websites and fails to pay Plaintiff, unless a party clicks on the "ad unit." Upon further information and belief, Defendant Alphabet, dba, Google, dba YouTube, also charges advertising fees per video view. Defendant charges fees on ads referred to as "bumper ads," "skippable video ads" and "non-skippable video ads. Upon the same information and belief, a typical video ad runs between $0.10 and $0.30 per view. Thus, Plaintiff is further informed and believes, and based thereupon alleges, an ad campaign (on YouTube) with a $0.10 video view would cost (the ad customer) $1,000 for every 10,000 people that watch the video ad.

96.     Plaintiff is informed and believes, and based thereupon alleges, that as a direct and proximate result of the false advertisement program created and operated by Defendant Alphabet,[38] dba Google, LLC., dba, YouTube, LLC., and its former or current subsidiaries, Defendant Alphabet generated AdSense revenue, in the following amounts, in the following quarters: For the quarter ending June 30, 2018, Defendant Alphabet generated AdSense revenue in the amount of $32.657B, a 25.56% increase year-over-year; Defendant Alphabet's AdSense revenue for the twelve months ending June 30, 2018 was $123.898B, a 24.8% increase year-over-year; Defendant Alphabet's annual AdSense revenue for 2017 was $110.855B, a 22.8% increase from 2016; Defendant Alphabet's annual AdSense revenue for 2016[39] was $90.272B, a 20.38% increase from 2015; Defendant Alphabet's annual AdSense revenue for 2015 was $74.989B, a 13.62% increase from 2014; Defendant Alphabet's AdSense revenue for the twelve months ending December 31, 2014 was $66.001B, a 15.25% increase year-over-year; Defendant

---

[38] Defendant Alphabet's search engine AdSense, ad sales are the second largest source of revenue for Alphabet.
[39] In 2016, Defendant Alphabet earned nearly all of its revenue from Google advertising based on users' search requests.

Alphabet's AdSense revenue for the twelve months ending December 31, 2013 was $55.519B, a 52.75% increase year-over-year; Defendant Alphabet's AdSense revenue for the twelve months ending December 31, 2012 was $46.039B, a -2.84% decrease year-over-year; Defendant Alphabet's AdSense revenue for the twelve months ending December 31, 2011 $37.905B, a 25.40% increase year-over-year; Defendant Alphabet's AdSense revenue for the twelve months ending December 31, 2010 was $29.321B, a 26.46% increase year-over-year; Defendant Alphabet's AdSense revenue for the twelve months ending December 31, 2009 was $23.651B, a 17.07% increase year-over-year; and Defendant Alphabet's AdSense revenue for the twelve months ending December 31, 2008 was $21.796B, a 18.11% increase year-over-year. Upon information and belief, total AdSense revenue for Defendant Alphabet, between 2008 and 2018 is in the aggregate amount of $680,246,000,000.00 (billion dollars) in on-line "AdSense" advertisement revenue.

97. Thus, Plaintiff is informed and believes, and based thereupon alleges, as a direct and proximate result of Defendant Alphabet's false advertising campaign, executed from the time period of 2008 through 2018, Defendant Alphabet has generated and grossed $680,246,000,000.00 (billion dollars) in on-line "AdSense" Advertisement revenue. Upon the same information and belief, Plaintiff alleges he has been damaged, reasonably estimated in the minimum amount of $3,500,000,000.00.[40]

### (b) California State Law Claims

### V. *Agency Relationship Between Alphabet and the Defendants*

98. Upon information and belief, in 2003, Google spent $102 million to acquire "Applied Semantics," the makers of AdSense (PPC). Since 2003 and upon further information and belief, Defendant Alphabet, dba, Google AdSense (PPC) service, signed up millions of owners of Web sites to run various types of ads on their Web pages. Upon information and belief, and as a direct and proximate result of the purchase and AdSense PPC subscription service, Defendant Alphabet, dba, Google commands of 37.2% of the U.S. on-line digital advertising

---

[40] This sum represents less than 1/10th of 1% of the total amount of advertisement earned and profit-shared by Defendant Alphabet, through the AdSense (PPC) program between 2008 and 2018.

market.[41] Upon further information and belief, Defendant Alphabet, dba, Google, U.S. revenues from digital advertising is predicted to jump about 15% to $39.92 billion in (June) 2018. Upon further information and belief, Defendant Alphabet derives 100% of this income from her Google "Ad Spend" and Google Adsense, PPC programs, which consists of placing digital ads on websites owned by third-parties, including Plaintiff. Upon information and belief, and between the time period of 2008 through 2018, Defendant Alphabet has generated and grossed $680,246,000,000.00 (billion dollars) in on-line "AdSense" Advertisement revenue.

99.     Upon information and belief, the Defendants, and each of them, jointly and severally, purchased and currently maintain Google, "Ad. Spend" Accounts, designed to purchase ad space from Defendant Alphabet. Upon further information and belief, the Defendants, and each of them, jointly and severally, does business with Defendant YouTube, each maintains a YouTube Account, and Google AdSense accounts to generate advertisement revenue.[42]

100.     Upon information and belief, and with respect to the Google Adsense, Ad Spend purchases and YouTube Channels discussed herein, Defendants indirectly solicited business from Plaintiff within and/or through the scope of their agency with Defendant Alphabet, dba, Google, dba, YouTube.

101.     Upon information and belief, Plaintiff alleges that through the improper use of the DMCA, Alphabet has created and maintained an agency relationship with the Defendants, and each of them, jointly and severally. Specifically, Plaintiff is informed and believes, and based thereupon alleges Defendant Alphabet extends the DMCA copyright protection laws to the other Defendants, beyond their scope. Specifically, and upon information and belief, Plaintiff alleges Defendant Alphabet uses the DMCA[43] to target and intimidate competitors, of the Defendants

---

[41] Alphabet, dba, Google and Facebook remain the dominant digital advertising companies. They control a combined 58 percent of the $111 billion market. This is down from 59 percent in 2017 (Google 38.6% and Facebook 19.9%). Amazon will generate $4.61 billion in U.S. digital ad sales this year (2018). This represents 4.2 percent of the total digital ad market.

[42] The difference between a Google AdSense, "Ad. Spend" account and a YouTube "AdSense" (revenue sharing) account is as follows: A Google AdSense, "Ad. Spend" account is the account a customer uses to buy advertisement space from Google. A YouTube, or Google "AdSense" (revenue sharing) account is the account where Defendant Alphabet pays the website owner for serving advertisements on the web page.

[43] (*Id. At 18.*) Upon information and belief, Defendant Google asserted (in their New Zealand copyright filing): "Currently there are three main abuses of the DMCA. First, takedown notices supersede the fair use doctrine which

and each of them, jointly and severally. Upon information and belief, and as set forth herein, the Defendants and each of them, jointly and severally, have purchased "Ad Spend" accounts; each Defendant has a "AdSense" account; and each Defendant has other profit generating video sales contract with Defendant Alphabet. Thus, upon information and belief, Defendant Alphabet is acting as an agent of the Defendants, in ensuring that Plaintiff does not compete with the Defendants revenue generating activities.

VI.   *Relevant Market And Defendants' Market Power*

102.   Upon information and belief, Google was incorporated September 1998. Upon information and belief, Google formed Alphabet in 2015, becoming the parent company for YouTube and Google. Upon information and belief, Defendant Alphabet has an overall market capitalization that exceeds $500 billion dollars. Upon information and belief, the relevant geographic market for purposes of Plaintiff's claim is worldwide, including the United States and other relevant submarkets thereof. Upon further information and belief, The relevant product market for purposes of Plaintiff's claims consist of the following:

> **(a)** Internet and website based advertisement;
>
> **(b)** Internet Streamed Videos and Movies; and
>
> **(c)** Internet Streamed Music and Music videos.

103.   As alleged herein, and upon information and belief, there are no other substitutes available to customers and end-users for products within the web based advertisement market, the Internet streamed video and movie market, or the Internet streamed music, or music video market. As alleged herein, there are barriers to entry into the web based advertisement market, the Internet streamed video and movie market, or the Internet streamed music, or music video market, including Defendants' unlawful anti-competitive activities to exclude competition.

104.   Upon further information and belief, the defendants' anti-competitive conduct in the relevant market has excluded competitors and resulted in consumers paying higher than

---

goes against the freedom of speech act. Second, if the person sending the takedowns do not own the copyright to the material they are claiming, the legitimate owner's copyrights are then violated for 10–14 days while the takedown notice is processed. Third, the DMCA has been used to invoke censorship rather than to protect legitimate copyright holder's rights on-line."

would have prevailed in competitive markets. Consumers paying higher prices and the exclusion of competitors are indicia of Defendants' market power and unlawful anti-competitive conduct.

**VII.**   *Defendant Alphabet's Unfair Competition (The AdSense PPC Program)*

105.   Upon information and belief, and since its founding in 1998, Google (now doing business as Alphabet) has spent large sums to secure what it has knowingly, willingly and maliciously, calculated to be significant Internet marketing advantages. Upon information and belief, in 2003, Google spent $102 million to acquire "Applied Semantics," the makers of AdSense (PPC). Upon information and belief, In 2006, Google paid $102 million for another Web advertisement business, "dMarc Broadcasting." Upon information and belief, Defendant Google announced in 2006 that it would pay $900 million over three and a half years for the right to sell ads on "MySpace.com." Upon information and belief, Defendant Google also purchased Defendant YouTube for $1.65 billion dollars in 2006. Upon information and belief, in 2007, Google made its largest acquisition to date by purchasing online advertising firm "DoubleClick" for $3.1 billion. Upon information and belief, in 2009, Defendant Google purchased the mobile advertising network "AdMob," for $750 million. Upon further information and belief, Google has bought stakes in multichannel networks such as Vevo and Machinima, to ensure their content stays on its website.

106.   Upon information and belief, Plaintiff alleges that the foregoing purchases were part of Defendant Google's efforts to restrain trade in the advertising industry and engage in unfair competition. Upon further information and belief, Plaintiff alleges that the foregoing purchases were made by Defendant Alphabet, dba, Google, in order to combine the various firms' databases of information in order to tailor ads to consumers' individual preferences.

107.   Upon information and belief, under the traditional forms of advertising an advertising customer pays to place the advertisement. Upon information and belief, the traditional cost of the advertisement depends upon the following:

(i). placement (location) of the ad;

(ii). the size (width + length) of the advertisement; and

(iii). the amount of time the advertisement is run (or capable of being viewed by the viewing audience).

108.    Upon information and belief, Alphabet began the AdSense (PPC), PPC program in 2003. Upon information and belief, Defendant Alphabet's AdSense (PPC) program is designed to monopolize the U.S. (and Global) advertisement markets. Upon further information and belief, Defendant Google, LLC., described in their U.S. Patent[44] for AdSense (PPC):

> "Advertising using traditional media, such as television, radio, newspapers and magazines, is well known. Advertisers have used these types of media to reach a large audience with their advertisements ("ads"). To reach a more responsive audience, advertisers have used demographic studies. For example, advertisers may use broadcast events such as football games to advertise beer and action movies to a younger male audience. However, even with demographic studies and entirely reasonable assumptions about the typical audience of various media outlets, <u>advertisers recognize that much of their ad budget is simply wasted because the target audience is not interested in the ad they are receiving.</u>"

109.    Upon information and belief, and as a direct and proximate result of the PPC program maintained by Defendants, "ad spend account" customers do not pay for the placed advertisement(s), unless an advertisement consumer clicks on the automatic text, image, video,

---

[44] On March 25, 2004, United States Patent Application 20040059708, was filed by a Jeffrey A. Dean. The patent is titled: "Methods and apparatus for serving relevant advertisements." The relevance of advertisements to a user's interests is improved. In one implementation, the content of a web page is analyzed to determine a list of one or more topics associated with that web page. An advertisement is considered to be relevant to that web page if it is associated with keywords belonging to the list of one or more topics. One or more of these relevant advertisements may be provided for rendering in conjunction with the web page or related web pages. The inventors of this method are listed as Dean, Jeffrey A.; (Menlo Park, CA) ; Harik, Georges R.; (Mountain View, CA) ; Bucheit, Paul; (Mountain View, CA). The patent application has been assigned to Google, Inc. This application claims the benefit of U.S. Provisional Application Ser. No. 60/413,536, filed on Sep. 24, 2002, which is incorporated herein by reference.             (See http://appft1.uspto.gov/netacgi/nph-Parser?OS=DN%2F20040059708&RS=DN %2F20040059708&Sect1=PTO1&Sect2=HITOFF&d=PG01&f=G&l=50&p=1&r=1&s1=)

or interactive media advertisements. Upon information and belief, Plaintiff alleges, the Defendants' AdSense (PPC), program amounts to free advertisement.

110. Thus, Plaintiff is informed and believes, and based thereupon alleges, that Defendant Alphabet has utilized his websites to provide free advertisement to her Ad Spend customers. Plaintiff is further informed and believes that all of his sites combined have generated approximately 26-30 million viewers. Upon this same information and belief, Defendant Alphabet, dba, Google, dba, YouTube earns approximately $100,000.00 dollars per million views, under the AdSense (PPC) program; while a publisher will earn roughly $2,000.00 for every million views, under the AdSense (PPC) program. Plaintiff is further informed and believes, Defendant Alphabet, dba, Google, dba, takes 45% (percent) of the $2,000.00. Upon Information and belief, this 45% fee deducted from an AdSense (PPC) site, or content creators, is in addition to the fees charged to customers with "ad spend" account(s).

111. On information and belief, Defendants have approximately a 38% share of the U.S. Internet and website based advertisement; a 85% share of Internet Streamed Videos and Movies; and a 85% share of Internet Streamed Music and Music videos. Upon information and belief, Plaintiff alleges that as a direct and proximate result of the Defendants' AdSense (PPC) program, Defendant Alphabet has and exercises substantial and significant market power within the relevant markets.

112. Upon information and belief, Plaintiff alleges that Defendant Alphabet's AdSense (PPC), program is specifically intended to intimidate competitors and exclude competition. Upon information and belief, the program has the desired unlawful effect of raising prices and excluding competition. Upon information and belief, Plaintiff alleges that Defendant Alphabet's program had, at all times mentioned herein, the effect of excluding competition and increasing prices to consumers in the relevant markets by restricting the supply of available advertising markets.

113. Upon information and belief, Plaintiff alleges that the aim of the AdSense (PPC) program is the sale and placement of on-line advertisement, containing unconscionable clauses,

giving the Defendant Alphabet the ability to unlawfully control and own global advertising markets.

114.    Plaintiff is informed and believes, and based thereupon alleges, the Defendants had a statutory duty, under California Law, to "avoid unfair competition [or] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ... ." However, Upon further information and belief, Defendant Alphabet, knowingly, deliberately and maliciously failed, and still continue to fail, to comply with their statutory duty to engage in fair business practices and, instead, have unlawfully kept and distributed among themselves billions of dollars that illegally correspond to the anti-competitive acts set forth above, and/or the monopolization of the advertising industry.

115.    Defendant Alphabet, dba Google AdSense (PPC), from time to time, have acted in concert to redesign the Google AdSense (PPC), program, to further roadblock competitors from competing in the relevant markets. Defendants' sole purpose for redesigning the anti-competitive ad program is to exclude competitors from the relevant markets, restrict output and increase customer and end-user prices.

116.    Upon information and belief, the damages incurred by the Plaintiff since 2008, and up to 2018, is reasonably estimated in the amount of $3,500,000,000.00.[45]

117.    Plaintiff also seeks a declaratory judgment under the federal patent laws that either (1) United States Patent Application: 0040059708 ("The AdSense (PPC) Patents Application")[46] is invalid, in so much as it utilizes, or incorporates "PPC" features; (2) the "PPC" feature of AdSense (PPC) constitutes free advertisement, thereby violating anti-competition law, or (3) The AdSense (PPC) Patents Application, to the extent it incorporates, "PPC" are not otherwise enforceable. The de-monopolization and equitable sharing of the revenue being the object of this legal action.

**VIII.  _Defendant Alphabet's Fraudulent Misrepresentation_**

---

[45] This sum represents less than 1/10th of 1% of the total amount of advertisement earned and profit-shared by Defendants, through the AdSense (PPC) program between 2008 and 2018.
[46] http://appft1.uspto.gov/netacgi/nph-Parser?OS=DN%2F20040059708&RS=DN %2F20040059708&Sect1=PTO1&Sect2=HITOFF&d=PG01&f=G&l=50&p=1&r=1&s1= %2220040059708%22.PGNR.&u=%2Fnetahtml%2FPTO%2Fsrchnum.html

118.   At all times mentioned herein, and specifically, between the time period of October 15, 2008 and August 1, 2018, Plaintiff was informed and led to believe, by Defendant Alphabet, that YouTube, LLC., was an alternative to mainstream, major media outlets. Plaintiff relied upon this misrepresentation and created two YouTube channels.

119.   Upon information and belief, In January 2006, the Google Video Store opened, featuring premium content from traditional media companies such as CBS Corporation (television shows) and Sony Corporation (movies). Upon information and belief, "Google Video service," was overseen by Defendant Wojcicki. In June 2006 Google began offering premium content for free but with ads. Upon further information and belief, Defendant Wojcicki facilitated the purchase of YouTube on behalf of Defendant Google in June of 2006. Upon information and belief, Nearly all of YouTube's annual revenue comes from ads.

120.   Upon information and belief, In April 2016, Interpublic Group (IPG), the huge global ad firm, said it would shift $250 million in TV spending to YouTube. Upon information and belief, in 2016, YouTube said Toyota™ will increase its ad spending by 400%. Upon information and belief, In early May 2016, YouTube said it would launch a new product that lets big brands automatically buy ads for the site's hottest viral videos. Upon information and belief, the new offering is an offshoot from "Google Preferred," which enables agencies to reserve spots among YouTube's most popular channels. Upon information and belief, YouTube ad rates are higher for "Google Preferred than its usual rates."

121.   Upon information and belief, Viacom, dba, Paramount Pictures Corporation produces filmed entertainment services; interactive gaming applications through digital distribution sites; allows movie fans access to sharing movie clips; sells, markets, and distributes DVDs; and blu-ray discs for films and television shows internationally. Upon further information and belief, Viacom, dba, Paramount Pictures markets and sells videos on Defendant YouTube's Platform.

122.   Upon information and belief, Icon Group is one of Australia's leading independent cinema and film distributors. Icon Group focuses on quality feature films, TV and

alternative content within the Australian and New Zealand markets. Upon further information and belief, Icon Group markets and sells videos on Defendant YouTube's Platform.

123.    Upon information and belief, Walt Disney Studios[47] owns and operates the ABC broadcast network; cable television networks such as Disney Channel; ESPN (a U.S.-based global pay television sports channel owned by ESPN Inc., a joint venture owned by The Walt Disney Company (80%) and Hearst Communications (20%)); A&E Networks; and Freeform; publishing, merchandising, music, and theater divisions. Upon further information and belief, Walt Disney Studios markets and sells videos on Defendant YouTube's Platform.

124.    Upon information and belief, Apple Corps Limited produces and sells music albums, films, and video games primarily in the United Kingdom, United States, and Japan. Upon further information and belief, Apple Corps markets and sells videos on Defendant YouTube's Platform.

125.    Upon information and belief, Sony's principal U.S. businesses include Sony Electronics Inc., Sony Mobile Communications (USA) Inc., Sony Interactive Entertainment LLC., Sony Pictures Entertainment Inc., Sony Music Entertainment and Sony/ATV Music Publishing LLC. Upon further information and belief, Sony markets and sells videos on Defendant YouTube's Platform.

126.    Upon information and belief, Hearst is one of the nation's largest diversified media, information and services companies with more than 360 businesses. In 2007, Hearst (then known as Hearst-Argyle became one of the first television broadcasting groups to post their news stories on YouTube. Its major interests include ownership in cable television networks such as A&E, HISTORY, Lifetime and ESPN; 31 television stations such as WCVB-TV in Boston and KCRA-TV in Sacramento, Calif., which reach a combined 19 percent of U.S. viewers; newspapers such as the Houston Chronicle, San Francisco Chronicle and Albany Times Union.

---

[47] Upon information and belief, On December 14, 2017, Disney announced an agreement to merge with 21st Century Fox for $52 billion. The bid was later increased to $71 billion in June 2018. The merger largely included Fox's entertainment assets, including filmed entertainment, cable entertainment, and direct broadcast satellite divisions in the UK, Europe and Asia. The newly merged entity retained the former company's name, meaning The Walt Disney Company remained as the name of the merged business. Disney reported third-quarter adjusted earnings per share of $1.87 on revenue of $15.23 billion after the closing bell on Tuesday (August 7, 2018,). Revenue was up 7 percent from a year ago.

Defendant Hearst co-owns ESPN (a U.S.-based global pay television sports channel owned by ESPN Inc., a joint venture owned by The Walt Disney Company (80%) and Hearst Communications (20%)). Hearst Television owns and operates local television and radio stations serving 26 media markets across 39 states reaching over 21 million U.S. television households. Upon further information and belief, Hearst markets and sells videos on Defendant YouTube's Platform.

127.    Upon information and belief, The activities of the TMG[48] include trade in licenses, investments in television and radio stations and distribution and production of television films and movies. Through its subsidiaries, TMG has a presence in film and television production as well as distribution arms in the theatrical, home entertainment, TV and VOD segments. Since May 2017 TMG runs its first own SVOD-Channel FILMTASTIC on Amazon's platform Prime Video Channels and on Rakuten TV. TMG is a shareholder in the leading US-based production company Storied Media Group and in the digital production and distribution company Load Studios. In addition, TMG is majority shareholder in the publicly quoted production company Odeon Film AG. Upon further information and belief, TMG markets and sells videos on Defendant YouTube's Platform.

128.    Upon further information and belief, Defendant Fintage House[49] is a privately owned global film and TV rights company. Fintage House fully acquired Lasso Group from Billion Dollar Boy At the end of 2017. Lasso became a full member company under the Fintage House group after a share transfer in late 2017. Defendant Lasso Group is one of the fastest growing online monetization companies in the world. Defendant Lasso is a leader in online rights management for independent movie & TV monetizing working with YouTube, Dailymotion, Instagram and Facebook. Upon further information and belief, Defendant Fintage House, dba, Lasso Group markets and sells videos on Defendant YouTube's Platform.

---

[48] Upon information and belief, TMG has one of the largest film libraries in Europe. TMG is one of the largest license trading companies in Europe and one of the most respected players in the international market.
[49] Upon information and belief, Defendant Fintage House, dba, Lasso Group has offices in The Netherlands and Hungary with consultants in Australia, France, Germany, Italy, Japan, North and South America, South East Asia, Spain and the UK.

129.    Thus, Plaintiff alleges, upon information and belief, that at no time during the time period of October 15, 2008, up and through August 1, 2018, did Defendant Alphabet, dba, Google, dba, YouTube, represent to Plaintiff that Defendants were entering, or maintaining ad contracts, video sales, or revenue sharing with the Defendants mainstream media outlets. Plaintiff alleges that at all times mentioned herein, Defendant Alphabet, dba, Google, dba, YouTube, represented to Plaintiff that YouTube, LLC., was a site for amateur video, content creators, who could generate ad revenue through Defendant Google's AdSense (PPC) program. Plaintiff further alleges that had he known of the ad and video marketing contracts between Defendant Alphabet and the other defendants, Plaintiff would not have spent 10 years creating, managing, or marketing two different YouTube channels.

130.    Upon information and belief, Plaintiff alleges that as a direct and proximate result of Defendant Alphabet, dba, Google, dba, YouTube's intentional and malicious, fraudulent misrepresentation, the Plaintiff has incurred damages since 2008, and up to 2018, and reasonably estimated in the amount of $3,500,000,000.00.

IX.    *Defendants' Anti-Competitive (Association-in-Fact; and Restraint of Trade)*[50]

131.    Plaintiff is a leading content-creator (channel owner) on the YouTube website. Plaintiff is also a globally, renowned blogger on the Blogger website. Plaintiff's primary business is text, image, videos, music and advertisements.

132.    Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant herein, the Defendants, and each of them, jointly and severally, associated in fact for the common purpose of furthering and engaging in unfair competition and unlawful business practices.

133.    Upon information and belief, the association-in-fact, is an entity separate from and bigger than any of the "persons" (the Defendants and other members) comprising the same; where, at all times relevant herein, these "persons" were systematically linked with overlapping leadership, structural and financial ties, and continuing coordination.

---

[50] Unless stated otherwise, all facts stated herein, are stated upon information and belief.

134.    Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant herein, the association-in-fact was composed by the association in fact of the Defendant Alphabet, dba Google, dba, YouTube and its former or current subsidiaries, Viacom, dba, Paramount Pictures Corporation, Apple Corps Ltd., Sony Corporation, Hearst Corporation, Fintage House, dba, Lasso Group, Tele München Fernseh GmbH + Co. Produktionsgesellschaft VOD, Icon Film Distribution Pty Ltd (Australia VOD), Walt Disney Company, together with Page, Brin, Schmidt, Pichai, Bakish, Gianapoulous, Jones, Harai, Swartz, Aarts, Teves, Pahlad, Kloiber, Gibson, Davey, Iger, Mayer, Sandberg, Wojcicki and other unnamed and yet unknown individuals, partnerships, corporations or associations. It includes the forenamed Defendants and associated individuals, as well as persons who have not violated California's Unfair Competition laws.

135.    Upon information and belief, Plaintiff alleges the forenamed Defendants, as members of the association-in-fact, used said formal and legitimate association-in-fact as an instrument to perpetrate the unfair competition, unlawful business practices and monopolize the U.S. and global on-line advertising industry, through a pattern of unfair competition and unlawful business practices, as fully described herein after.

136.    Upon information and belief, the association-in-fact is a formal legitimate ongoing organization, functioning as a continuing unit, pursuing an interrelated course of conduct, and with a common or shared purpose and continuity of structure and personnel.

137.    Upon information and belief, structurally, the association-in-fact is an association comprised of the Defendants and other persons and entities whose common link is the purpose and nature of their business, i.e., placement and selling on-line advertisement through websites, videos, movies and music and providing Internet Service and Access that links directly to the websites, video sites, movie sites and music sites, that host, sell and serve on-line advertisement.

138.    The association-in-fact is engaged in interstate commerce through the activities of its associates, as described herein and before.

139.    Upon information and belief, the Defendants, and each of them, jointly and severally, own YouTube channels (or are "verified YouTube partners"), are "content creators,"

have active "YouTube ad spend" accounts, derive revenue from Defendant Alphabet's "AdSense (PPC)" program, in addition to the advertising revenue derived from their publicly and privately traded corporations.

140.    Upon information and belief, Defendant Alphabet, dba, Google, dba, YouTube, dba, Blogger owns all the web-based advertising platforms. Upon information and belief,  More than 70 percent of worldwide online search requests are handled by Alphabet, dba, Google, placing it at the heart of most Internet users' experience. Upon information and belief, Google.com[51] is the most visited website in the world. Upon information and belief,  Defendant Alphabet, dba, Google is the reigning king of 'spartan searching'. Upon information and belief, the search engine results section is also an advertising platform.  Upon information and belief, several other Google services also figure in the top 100 most visited websites, including YouTube and Blogger. Upon information and belief, much of the directed viewer traffic (1.8 billion users) to YouTube is driven by multichannel networks such as Fullscreen, Maker Studios, SonyBMG and Whistle Sports. Upon information and belief, Defendant Wojcicki handled two of Defendant Google's largest acquisitions — the $1.65 billion purchase of YouTube[52] in 2006 and the $3.1 billion purchase of DoubleClick in 2007.

141.    Upon information and belief, YouTube, as of 2018, is currently valued at $100 billion dollars or more. YouTube is an Advertisement-supported Platform. YouTube's DNA is in free video with ads. Advertisement sales have made YouTube a revenue juggernaut.[53] Advertisement sales rose 30% to 40% in 2016. Alphabet, dba, YouTube earned approximately $9 billion dollars in Advertisement Revenue in 2016. In 2017, Alphabet, dba, YouTube earned approximately revenue $13 billion in Advertisement Revenue. Defendant YouTube is doing around $15 billion dollars in annual (advertisement) sales as of 2018. YouTube's ad sales continue to grow at a rapid pace. Defendant YouTube's ad-targeting abilities are enabled by both its own user data and outside data it can get with Defendant Google's help. Defendant Alphabet,

---

[51] Google began as an online search firm, but it now offers more than 50 Internet services and products, from e-mail and online document creation to software for mobile phones and tablet computers.
[52] YouTube at the time was a small start-up company, successfully competing with Google's "Google Video service." Wojcicki's response was to propose the purchase of YouTube.
[53] Nearly all of YouTube's annual revenue comes from ads.

dba, Google, dba, YouTube has significant investments in building quality measurement tools that help companies gauge the impact of a video ad on things like awareness of a product and attitudes towards the brand that's selling it.

142.    Upon information and belief, Alphabet, dba, Google, dba YouTube in an (2018) earnings calls, revealed that outside of mobile search, YouTube has been the biggest driver behind its rapid advertisement sales growth. Last quarter, "paid [advertisement] clicks" on Alphabet's own sites and apps rose 59% annually. Upon information and belief, these figures cover not only actual ad clicks, but (among other things) the showing of YouTube video ads that were watched long enough for Alphabet, dba, Google, to get paid.

143.    Upon information and belief, Defendant YouTube's rapid viewing growth is driven by smartphones and the ability to "cast," or connect to Televisions. In 2018, YouTube disclosed it now has over 1.8 billion monthly logged-in viewers. This is up from 1.5 billion as of last June (2017). As far back as February 2017, YouTube said it was seeing over a billion hours of viewing per day. In response, Defendant Alphabet rolled out mobile-friendly ad formats such as six-second Bumper ads for smartphones. As a direct and proximate result of establishing these subscription services Defendant Alphabet, dba, YouTube has become the top-grossing U.S. iPhone app as of March (2018).

144.    Upon information and belief, all on-line advertisement customers must purchase advertisement space from Defendant Alphabet. Upon information and belief, all website, or YouTube channel owners must host on-line Google AdSense (PPC) advertisements. Every on-line ad sale, or purchase derives substantial profits for the defendants, and each of them, jointly and severally. Thus, Plaintiff is informed and believes and based thereupon alleges, there are no other substitutes available to consumers, channel, website owners, or end-users.

145.    Upon information and belief, Hulu is an American entertainment company that provides over-the-top media services owned by Hulu LLC.[54] Upon further information and belief, Hulu is a direct competitor of Defendant YouTube, LLC. Upon information and belief, Hulu is a joint venture with The Walt Disney Company, 21st Century Fox, Comcast, and AT&T.

---

[54] Hulu, like YouTube streams video with advertisements. Unlike YouTube, Hulu does not rely on content-creators, or channel owners.

Upon information and belief, The Walt Disney Company (holds 30% stake), 21st Century Fox (holds 30% stake), Comcast (via NBCUniversal; holds 30% stake), and AT&T (via WarnerMedia; holds 10% stake). Upon information and belief, a proposed acquisition was announced in December 2017, allowing Disney to acquire Fox's partial ownership, giving Disney a majority stake if the deal closes.

146.    Upon information and belief, Defendant Hearst owns a significant number of U.S. newsprint publications and multiple television media outlets that reach 19% of the U.S. viewing audience. Hearst Magazines is one of the world's largest publishers of monthly magazines, with 25 U.S. titles and close to 300 international editions. Each publication, media outlet, or magazine serves as an advertising platform. In 2014, Defendant Hearst saw revenue of $10.3 billion dollars. In 2015, Defendant Hearst saw revenue of $10.7 billion dollars. In 2016, Defendant Hearst saw revenue of $10.8 billion dollars. In 2017, Defendant Hearst saw revenue of $10.8 billion dollars.

147.    Upon information and belief, On December 11, 2005, Paramount said it had purchased DreamWorks SKG in a deal worth $1.6 billion. Upon information and belief, DreamWorks' former feature animation unit, now known as DreamWorks Animation (which currently owns the DreamWorks trademarks), was spun off in 2004, and as of August 2016 is a subsidiary of NBCUniversal (Comcast). Upon information and belief, In 2017, Viacom's cable television unit, revenue increased 3% to $2.55 billion due to higher advertising revenue. International revenue was up 24% to $593 million with the purchase of a South American operation, while domestic revenue slipped 2% to $1.96 billion. Advertising revenue was up 6% to $1.22 billion. Domestic advertising was flat at $936 million. Affiliate fees declined 1% to $1.15 billion.

148.    Upon information and belief, In 2014, Defendant Sony invested approximately $4.26 billion U.S. dollars in advertising. In 2015, Defendant Sony invested approximately $3.99 billion U.S. dollars in advertising. In 2016, Defendant Sony invested approximately $3.5 billion U.S. dollars in advertising. In 2017, Defendant Sony invested approximately $3.27 billion U.S. dollars in advertising. On information and belief, these advertising dollars were paid to

Defendant Hearst and Defendant Alphabet, dba, Google, dba, YouTube. Defendant Sony recorded consolidated annual revenue of approximately $77.04 billion dollars for the fiscal year ended [2017].

149.    Upon information and belief, On April 8, 2005, a partnership led by Comcast and Sony Pictures Entertainment finalized a deal to acquire MGM and its affiliate studio, United Artists, and created an additional outlet to carry MGM/UA's material for cable and Internet distribution. Upon information and belief, Comcast and Sony announced on November 14, 2017 that Xfinity TV customers will soon be able to access their cable service via the Xfinity TV Partner app on Sony's Android TVs. Upon information and belief, On Saturday, September 22, 2018, Comcast bid $39 billion to purchase British pay-tv service "Sky". If "Sky's" shareholders approve, Comcast can purchase the network for $39 billion. The purchase would make Comcast the largest pay-TV service in the world by opening up the European market.

150.    Upon information and belief, and since inception, Defendant Icon's titles have generated over $300 million at the box office in Australia and New Zealand and the United States. Icon also maintains a 50% ownership of The Bridgeway and Tauranga cinemas in New Zealand.

151.    Upon information and belief, Defendant Apple owns Apple Records, Apple Films and Apple Publishing. The company has a grand total of four share-holders. Their products include Music, entertainment, mass media, centered around the famous band, "The Beatles."

152.    Upon information and belief, In 2014, Defendant Disney spent $2.8 billion in advertisement costs. In 2015, Defendant Disney spent $2.6 billion in advertisement costs. In 2016, Defendant Disney spent $2.9 billion in advertisement costs. In 2017, Defendant Disney spent $2.68 billion in advertisement costs. On information and belief, these monies were paid to Defendant Alphabet, dba, Google, dba, YouTube and Defendant Hearst. In 2016, Disney generated ad revenue in an amount of approximately $8.65 billion U.S. dollars. In 2015, Disney generated ad revenue in an amount of $8.5 billion U.S. dollars.

153.    Upon information and belief, Fintage House, dba, Lasso [Group, or] Rights Limited is an active company incorporated on 14 December 2015 with the registered office

located in London, Greater London. Lasso Group generates revenue by claiming advertising revenues otherwise paid to unauthorized third parties. The LASSO business line offers a zero-cost platform to monetize on-line film and TV companies movie releases and TV shows. Lasso uses technology to identify sites that are using copyrighted content online and then monetizes it with Google AdSense (PPC) advertisements.

154.    Upon information and belief, the activities of Defendant TMG include trade in licenses, investments in television and radio stations and distribution and production of television films and movies. Through its subsidiaries, TMG has a presence in film and television production as well as distribution arms in the theatrical, home entertainment, TV and VOD segments. Since May 2017 TMG runs its first own SVOD-Channel FILMTASTIC on Amazon's platform Prime Video Channels. Amazon provided start-up capital for defendant Alphabet, dba, Google, dba, YouTube, LLC.

155.    Upon information and belief, Defendants, and each of them, jointly and severally, sell their products on exclusive, Google based and own web platforms, and specifically YouTube. Defendants, and each of them, jointly and severally, purchase/own Google/YouTube Ad Spend Accounts, where each exclusively purchases AdSense (PPC), advertisement space from Defendant Alphabet.

156.    On Information and belief, Plaintiff alleges an unlawful, anti-competitive agreement between the Defendants, and each of them, jointly and severally, to sell their products, and purchase and/or sell advertisements, exclusively on Google own web based platforms and specifically, through the Google AdSense (PPC) program.

157.    Upon information and belief, each of the Defendants, individually, and through their interlocking board of directors and association-in-fact with the other Defendants, is, or has been engaged in, or its activities affect or have affected, interstate commerce.

158.    Upon information and belief, the Plaintiff alleges, Defendants, and each of them, jointly and severally, have taken a series of actions designed solely to inhibit and exclude competition in the relevant markets. Upon information and belief, these actions include: **(a)** purchasing all of the on-line advertisement companies, **(b)** implementation of the AdSense (PPC)

program, **(c)** terminating the websites, or YouTube channels of any party that has a dispute with either of the defendants, **(d)** putting in place a program to buy and sell advertisement, exclusively from another of the defendants, and **(g)** the association-in-fact with the other Defendants.

159.    On information and belief, at the time customers purchase Google AdSense (PPC), ad space, customers are not aware that Alphabet, or the other Defendants have engaged in anti-competitive exclusionary conduct that forces customers to buy Advertisement space supplied, or provided by Alphabet.

160.    On information and belief, for the purpose of effectuating Defendants' illegal exclusionary conduct, Defendant Alphabet, dba, Google tracks customers, site/channel owners and end-users. Defendant Alphabet is thus able to isolate and target customers, site/channel owners and end-users who attempt to use, sell, or purchase other forms of on-line advertisement space. In doing so, Alphabet is able to unlawfully exclude competition and increase prices to customers and end-users.

161.    On information and belief, virtually every website on the Google platforms has AdSense (PPC), advertisement, and no other form of advertisement. On information and belief, the Defendants conspired to create and use an anti-competitive advertisement program. On information and belief, and as a direct and proximate result of this association-in-fact and Defendant Alphabet's anti-competitive advertisement program, Plaintiff and other competitors are locked out of the relevant markets.

162.    On information and belief, the Defendants, and each of them, jointly and severally, have acted with the intent to restrain and monopolize the relevant markets to ensure that Defendants will obtain artificially inflated monopolistic profits from Defendant Alphabet's Google AdSense (PPC) program.

163.    At all times relevant herein, the Defendants, and each of them, jointly and severally, on their own or through their agents or employees, have knowingly, intentionally and unlawfully, aided and abetted and conspired with the other members of the association-in-fact defined hereunder to commit within the State of California (United States) the wrongful acts alleged in this complaint and/or committed or participated in the commission of those acts within

or outside the State of California (United States), purposefully directing their wrongful acts toward the forum of California, causing in California, directly or indirectly, the violations of California Business & Professions Code; the California Civil Code and the injuries sustained by the Plaintiff.

164.   Upon information and belief, Defendants' unfair competition and unlawful business practices were conducted through a pattern of acts and transactions, which occurred and/or had their effect within the State of California and the United States.

165.   Moreover, the profit or gain derived by the Defendant members of the Association-in-Fact from the sale of on-line advertisements in reality amounted to 100% of the profit or gain, derived from on-line advertisement sales in the last decade.

166.   Upon information and belief, Plaintiff alleges that as a direct and proximate result of Defendants' intentional and malicious, anti-competitive activities, the Plaintiff has incurred damages since 2008, and up to 2018, and reasonably estimated in the amount of $3,500,000,000.00.

**X.**   ***Defendant Alphabet's Breach of Contract (The AdSense PPC Program)***

167.   Beginning on or about October 8, 2008, and up to August 1, 2018, Plaintiff was a leading content-creator (channel owner) on the YouTube website. Plaintiff is also a globally, renowned blogger on the Blogger website. Plaintiff's primary business is text, image, videos, music and advertisements. Upon information and belief, Defendant Alphabet, dba,YouTube relies on ad revenue-sharing deals with content partners (website owners), or channel owners. On, or about October 8, 2008, and continuing up to August 1, 2018, Plaintiff did in fact enter into a contract with Defendant Google AdSense to serve ads on his Blogger and YouTube channels. At all times mentioned herein, At all times mentioned herein, Plaintiff engaged in the performance of the contract and abided by the terms and conditions of the contract, as set forth by Defendant Alphabet. From on, or about October 8, 2008, and continuing up to August 1, 2018, Defendant Alphabet served digital ads on Plaintiff's YouTube channels and Blog pages.

168.   Upon information and belief, Defendant Alphabet also does business as YouTube Red and YouTube TV subscription service(s). Upon information and belief, YouTube Red

provides ad-free (or no ad) YouTube videos: some original television shows; and access to the Google Play Music service for $10 per month. Upon information and belief, Defendant Alphabet, dba, YouTube takes videos from The Williby Channel and The Attorney Depot™ Channel and hosts them on the Defendant's YouTube Red subscription service. At all times mentioned herein, Plaintiff engaged in the performance of the contract and abided by the terms and conditions of the contract , as set forth by Defendant Alphabet. From on, or about October 8, 2008, and continuing up to August 1, 2018, Defendant Alphabet served digital ads on Plaintiff's YouTube videos, on its YouTube Red subscription service and as a direct and proximate result, collected revenue from her Google AdSense program.

169.    Plaintiff is informed and believes, and based thereupon alleges, that in breach of the contract, between October 8, 2008 and August 1, 2018, Defendant Alphabet paid The Attorney Depot™ Channel **$0.00** for use of the The Attorney Depot™ Channel videos on the YouTube Red subscription service. Upon the same information and belief, Plaintiff alleges that, Defendant paid The Williby Channel amounts ranging from $0.01 - $0.10 per month for utilizing videos from The Williby Channel on her YouTube Red subscription service. Plaintiff, as set forth above, was informed and led to believe, by Defendant Alphabet, that he would in fact receive $0.25, per ad click, and a percentage of the non-clickable ad revenue. In fact, Plaintiff received nothing. Plaintiff is further informed and believes, and based thereupon alleges, that in furtherance of this breach of the contract, Defendant Alphabet terminated Plaintiff's YouTube channel's and retained the revenue Plaintiff earned for their own benefit. In fact, Plaintiff is informed and believes, and based thereupon alleges, that based upon his performance of the contract, set forth by Defendant Alphabet, Defendant Alphabet profited in the amount of $680,246,000,000.00 (billion dollars).

170.    Plaintiff is informed and believes, and based thereupon alleges, that as a direct and proximate result of the Defendants' breach of contract, Plaintiff has incurred substantial damages. Upon information and belief, Defendant Alphabet had to statutory duty to abide by the contract imposed upon Plaintiff, without negotiation, by the express disposition of California law. Nevertheless, the Defendants have made no effort to comply with the law, enriching

themselves in billions of dollars at the expense of the Plaintiff, a Google website and YouTube channel owner. Plaintiff is informed and believes, and based thereupon alleges, the damages incurred by the Plaintiff since 2008, and up to 2018, is reasonably estimated in the amount of $3,500,000,000.00.

**XI**     *Defendant Alphabet's Unlawful Conversion*

171.    Upon information and belief, Defendant Alphabet, between the time period of October 8, 2008, did in fact engage, in the fraudulent claims and allegations of copyright infringement against Plaintiff, in order to deny and unlawfully convert advertisement revenue earned by the Plaintiff. Upon information and belief, Plaintiff alleges, the Defendants and each of them, jointly and severally, intended such funds for their own pecuniary benefit.

172.    The seizure of the advertisement revenue earned by Plaintiff constitutes a violation to the provisions of California Law. As proximate cause of the Defendants' unlawful conversion of Plaintiff's ad revenue, the Plaintiff has been injured in his property inasmuch as he has been object of unlawful conversion by the Defendant's Google, AdSense (PPC) advertisement revenue program.[55]

173.    Upon information and belief, Plaintiff alleges, the illegal retention of advertisement revenue by the Defendants and each of them, jointly and severally, of the portion of the advertisement fees earned by Plaintiff has resulted in billions of dollars of illegal gains for them.[56]

174.    The Defendants, and each of them, jointly and severally, failed to comply with the express mandate of the law, From 2008 to 2018, as shown above, the Defendant Alphabet reported in its financial statements gross income derived from on-line advertisement sales in the total amount of <u>$680,246,000,000.00 (billion dollars)</u>, and declared therein (said financial

---

[55] In Free Range Content, Inc. v. Google Inc., No. 5:14-cv-02329 (BLF) Plaintiffs challenged the "Terms and Conditions" of the Google AdSense Program as unconscionable. The court held: "Taking the allegations are true, the Challenged Terms are one-sided because they let Google withhold funds for up to two months regardless of the severity of the purported breach and even if the funds are earned through valid activity, notwithstanding Google's supposed ability to distinguish between valid and invalid ad serves." (at page 14).

[56] In the first week of March 2018, Google has agreed to pay $11 million to settle a class-action by publishers who accused Google of wrongly withholding ad revenue. The deal calls for Google to reimburse some publishers between 30% and 100% of the money they were owed when their accounts were terminated. See Free Range Content, Inc. v. Google Inc., No. 5:2014-cv-02329 (BLF). However, as of 08/01/2018, Defendants have engaged in the same conduct against Plaintiff.

statements) are the distribution of billions of dollars in dividends among the Defendant members of the Association-in-Fact.

175.    Plaintiff is informed and believes, and based thereupon alleges, that as a direct and proximate result of the Defendants' unlawful conversion, Plaintiff has incurred substantial damages, according to proof at trial.

**XII.    _Defendant Alphabet's Breach of Covenant And Good Faith_**

176.    Between October 15, 2008 and August 1, 2018, The Attorney Depot™ Channel and Google+ account produced, globally marketed and branded "trial court coverage" videos on YouTube. The Attorney Depot™ channel averaged 500,000 -to- 1,000,000 million viewers per month. The foundational basis of the The Attorney Depot's YouTube "trial court coverage" genre was the Cable News Network (CNN) television genre Court TV. Upon information and belief, Court TV was launched in 1991. Upon further information and belief CNN discontinued the television version of Court TV in 2007. Plaintiff launched The Attorney Depot in 2008, with a specific emphasis on trial coverage.

177.    While "trial court coverage" was the primary genre of The Attorney Depot™, The Williby Channel's primary genre was real life interactions, including police interrogations and/or police interactions with civilians. This genre was so popular on YouTube, The Williby Channel, grossed approximately 1,000,000 (one-million) viewers per year (between November 13, 2013 and August 1, 2018).

178.    Despite the fact "trial court coverage" videos are material(s) in the public domain; and subject to use under statutory "fair use" law(s), between October 15, 2008 and August 1, 2018, Defendants filed allegations of copyright infringement against Plaintiff's channel, The Attorney Depot™. Despite the fact "police interrogations and police interactions with civilians" videos are material(s) in the public domain; and subject to use under statutory "fair use" law(s) between November 11, 2013 and August 1, 2018, the Defendants and each of them, jointly and severally, filed allegations of copyright infringement against Plaintiff's channel, The Williby Channel. As a direct and proximate result of these allegations of copyright infringement, Defendant Alphabet, removed videos, restricted the channels, permanently terminated The

Williby and The Attorney Depot™ YouTube channels and restricted Plaintiff's access to the The Attorney Depot™ Google+ account.

179.    Upon information and belief, and Prior to 2008, few if any, YouTube channels hosted "trial court coverage," or "police interaction" videos on YouTube. Upon information and belief and as a direct and proximate result of a decade of marketing YouTube The Williby and The Attorney Depot™ Channels by Plaintiff, virtually every major U.S. media network, including the Defendants, and each of them, jointly and severally, has joined YouTube and now host "trial court coverage" and "police interaction" videos.

180.    Upon information and belief, and since to 2008 and up to August 1, 2018, the Defendants and each of them, jointly and severally, have joined YouTube and now host "trial court coverage" and "police interaction" videos, generating millions of monthly viewers and billions in advertisement revenue. In fact, Plaintiff is informed and believes, and based thereupon alleges, Defendant Alphabet profited in the amount of $680,246,000,000.00 (billion dollars).

181.    Plaintiff is informed and believes, and based thereupon alleges, that as a direct and proximate result of the Defendants' Breach of Convenant & Good Faith, Plaintiff has incurred substantial damages, according to proof at trial.

**Declaratory Relief (Invalidity of Patent)**

**(AGAINST DEFENDANT ALPHABET, dba, GOOGLE, LLC., dba, GOOGLE ADSENSE (PAY-PER-CLICK).)**

182.    The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

183.    This is a claim for declaratory judgment under 28 U.S.C. § 2201 and 2202 involving the rights of the parties under federal law and is asserted against Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, YouTube, LLC. There is a real pending controversy between to parties as to the validity of The Patent Application.

184.    The United States Patent Application: 0040059708 ("The Google, AdSense (PPC) Patents Application") is invalid, in so much as it utilizes, or incorporates "PPC" features.

185.    Upon information and belief, Defendant Alphabet has so misused The Patent and has so used them in violation of anti-trust laws as to render them unenforceable.

186.    Plaintiff is entitled to a judgment declaring that United States Patent Application, No. 0040059708 is invalid.

187.    The "PPC" feature of Google, AdSense (PPC) constitutes free advertisement.

188.    Plaintiff is entitled to a judgment declaring that the "PPC" feature of Google, AdSense (PPC) constitutes free advertisement, thereby violating anti-competition law.

189.    Absent a declaration of rights by this Court, the unlawful, anti-competitive actions by Defendant Alphabet will subject Plaintiff to continuing uncertainty and damages to its business. To resolve the legal and factual questions raised by Plaintiff and to afford relief from uncertainty and controversy, which the unlawful, anti-competitive actions by Defendant Alphabet have precipitated, Plaintiff is entitled to a declaratory judgment of its rights under 28 U.S.C. § 2201 and 2202.

### Declaratory Relief (First Amendment)

### (AGAINST DEFENDANT ALPHABET, dba, GOOGLE, LLC., dba, YOUTUBE, LLC.)

190.    This is a claim for declaratory judgment under 28 U.S.C. § 2201 and 2202 involving the rights of the parties under federal law and is asserted against Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, YouTube, LLC. There is a real pending controversy between to parties as to whether Defendants are (and/or) were acting as State Actors; and as to whether Defendants' platform YouTube, LLC., is a Public Free Speech Forum.

191.    Plaintiff therefore respectfully request that the Court enter a judgment including:

**(a)**    A declaratory judgment, declaring that Defendants were at all times mentioned herein acting as state actors and thus acted in violation of the First Amendment to the United States Constitution.

**(b)**  A declaratory judgment, declaring that Defendants' actions as described herein violated the rights of Plaintiff under the First Amendment to the United States Constitution.

### COUNT I.

### CONSPIRACY TO VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS

**(AGAINST DEFENDANT ALPHABET, dba, GOOGLE, LLC., dba, BLOGGER, dba, YOUTUBE, LLC.)**

192.    The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

193.    This cause of action arises under the First Amendment of the United States Constitution and is asserted against Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, YouTube, LLC.

194.    The Defendants and each of them, jointly and severally, knowingly, intentionally and unlawfully, aided and abetted, and conspired with each other, to violate Plaintiff's rights under the First Amendment to the United States Constitution by conspiring to prohibit Plaintiff from exercising his constitutional right to free speech and expression, as well as freedom of the press, and by conspiring to retaliate against Plaintiff for attempting to exercise those same rights.

195.    As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff has suffered irreparable injury, significant and substantial economic damages, according to proof at trial.

196.    Pursuant to 42 U.S.C. § 1988(b), the Plaintiff is entitled to reasonable attorneys' fees.

**COUNT II. VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS**

**(AGAINST DEFENDANT ALPHABET, dba, GOOGLE, LLC., dba, BLOGGER, dba, YOUTUBE, LLC.)**

197.    The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

198.    This cause of action arises under the First Amendment of the United States Constitution and is asserted against Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, YouTube, LLC.

199.    Defendants' actions described herein violated Plaintiff's rights under the First Amendment to the United States Constitution by prohibiting Plaintiff from exercising his

constitutional right to free speech and expression, as well as freedom of the press, and by retaliating against Plaintiff for attempting to exercise those same rights.

200.    The violation of Plaintiff's First Amendment rights occurred pursuant to a policy, custom, practice, and a pattern of anti-competitive activity, maintained by the Defendants, of having content removed from a competitor websites, or having the website terminated, based upon false and frivolous claims of copyright infringement, when public domain and fair use laws make use of such content lawful, and of retaliating against Plaintiff, a website owner who has filed counter-notices under the DMCA, by terminating websites, YouTube channels, owned by Plaintiff and denying Plaintiff access to social media accounts, on Defendant owned web platforms.

201.    Defendants' conduct violated clearly established constitutional, or other rights, of which Defendants knew, or of which reasonable persons in Defendants' industry should have known, rendering Defendants liable to Plaintiff under the U.S. First Amendment.

202.    As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff has suffered irreparable injury, significant and substantial economic damages, according to proof at trial.

203.    Pursuant to 42 U.S.C. § 1988(b), the Plaintiff is entitled to reasonable attorneys' fees.

### Count III

### MATERIAL MISREPRESENTATION (17 U.S.C. § 512, Subsection (f))

### (AGAINST ALL DEFENDANTS)

203.    The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

205.    This cause of action arises under **17 U.S.C. § 512, Subsection (f)** and is asserted against all the Defendants.

206.    The Defendants' notices filed, jointly and severally, under the DMCA and Defendants' alleged unlawful conduct, as alleged above, constitute material misrepresentations and/or omissions of nature, characteristics and qualities of Plaintiff's video uploads to YouTube

and are thus in violation of subsections (f)(1) of 17 U.S.C. § 512. Such misrepresentations and omissions were made willfully and in bad faith, with reckless and willful disregard of "fair use" laws.

207.   Plaintiff's video uploads, about which Defendants have made misrepresentations, as well as Plaintiff's competing videos, are marketed and sold in interstate commerce, and in commerce between the United States and foreign countries.

208.   Plaintiff is entitled to an award of damages including costs and attorneys' fees, under 17 U.S.C. § 512(f)(2).

## COUNT IV

## VIOLATION OF THE LANHAM ACT (15 U.S.C. § 1125(a)(1)(B))

## (AGAINST DEFENDANT ALPHABET, dba, GOOGLE, LLC., dba, BLOGGER, dba, YOUTUBE, LLC.)

209.   The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

210.   This cause of action arises under **15 U.S.C. § 1125(a)(1)(B)** and is asserted against Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, YouTube, LLC.

211.   Defendants' false advertisements and omissions concerning Plaintiff's video uploads to YouTube have deceived and are likely to deceive a substantial segment of the intended audience.

212.   The false advertisements made by Defendants are material and are likely to influence purchasing decisions in the relevant markets. Such false advertisements have proximately caused and/or likely to cause injury to Plaintiff by diverting sales from Plaintiff to the Defendants. Defendants' illegal conduct has substantially injured Plaintiff's business reputation.

213.   Plaintiffs have been damaged in an amount of $3,500,000,000.00 to be proven at trial as a result of Defendants' false advertisement.

214.   Plaintiff is entitled to an award of damages, including an amount up to three times the amount found as actual damages, reasonable attorneys' fees under 15 U.S.C. 1117.

Such conduct has also irreparably harmed Plaintiff by leading consumers and others in the trade to believe that Plaintiff is engaged in illegal conduct and is dishonest and disreputable in business.

**COUNT V**

**UNFAIR COMPETITION**

**(AGAINST ALL DEFENDANTS )**

215.   The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

216.   This cause of action is asserted against all Defendants.

217.   Each of the Defendants, jointly and severally, for purposes of this particular cause of action, is or has been a "person" employed by, or associated with a member of the Association-in-Fact, and engaged in, or the activities of which affect, foreign or interstate commerce, and as such, has conducted or participated, directly or indirectly, in the conduct of such Association-in-Fact's affairs through a pattern of unfair business practices as described herein before.

218.   For purposes of this particular cause of action, the Association-in-Fact is the association in fact defined in Section XI, supra.

219.   In furtherance of their anti-competitive activity, and in order to effects its objectives, the Association-in-Fact, knowingly, intentionally and unlawfully, aided and abetted to commit, attempted to commit, conspired to commit, did commit, and caused to be committed, the anti-competitive activity to illegally obtain advertisement revenue as part of the Google AdSense (PPC) program.

220.   Defendants have engaged in an unlawful contract, combination, or conspiracy to restrain interstate commerce in the relevant markets in the United States in violation of Cal. Bus. & Prof. Code, Section 17200.

221.   Defendants' aforesaid unlawful combination and conspiracy to restrain commerce in the relevant markets in California has consisted, among other things, of Defendants'

conspiring to engage in the above alleged predatory and/or anti-competitive conduct for the purpose of restraining commerce in the relevant markets in California.

222.    Defendants' actions, as alleged above, have injured competition and adversely affected commerce within California and business activities in California commerce.

223.    Defendants' actions have had the following adverse effects, among others, on the relevant markets:

(a) reduced output within the relevant markets, and

(b) increased prices of products within the relevant markets.

224.    Through the conduct described herein above, in furtherance of the the anti-competitive activity, the members of the Association-in-Fact knowingly, intentionally and unlawfully, aided and abetted and conspired with each other to violate, and did violate California Business & Professions Code, Section 17200, which includes five definitions of unfair competition: (1) an unlawful business act or practice; (2) an unfair business act or practice; (3) a fraudulent business act or practice; (4) unfair, deceptive, untrue or misleading advertising; or (5) any act prohibited by Sections 17500-17577.5.

225.    Defendants intended to restrain interstate commerce and Defendants' actions, as alleged above, have unlawfully injured competition in and adversely affected interstate commerce and business activities in interstate commerce.

226.    Defendants' actions intentionally have had the following adverse effects, among others, on the relevant markets:

(a) reduced output within the relevant markets, and

(b) increased prices of products within the relevant markets.

227.    The Defendants' activities are anti-competitive and predatory and were individually undertaken with the specific intent to inhibit competition, control prices and create and maintain Defendants' monopoly in the on-line sale of the advertisements; and relevant products markets.

228.    There is a dangerous probability that the Defendants will succeed in its attempt to monopolize or maintain its monopolies in the on-line sale of the advertisements; and relevant products markets.

229.    On information and belief, the Defendants, and each of them, jointly and severally, willfully engaged in the actions, as alleged above, which constitute violations of Bus. & Prof. Code § 17200.

230.    Defendants' aforesaid anti-competitive activity in the relevant markets has consisted of the Defendants obtaining a monopoly in the on-line sale of the advertisements; and relevant products markets with, on information and belief, approximately an 85% share of each market and engaging in the above alleged predatory and/or anti-competitive conduct to maintain its monopoly power in each market.

231.    Through the conduct described herein above, the Defendants and the other members of the Association-in-Fact, which is engaged in, and which activities affect interstate commerce, knowingly, intentionally and unlawfully, aided and abetted, conspired to, and each of them in fact did, conduct or participate, directly or indirectly, in the conduct of the Association-in-Fact's affairs, through a pattern of unfair competition, in violation of Bus. & Prof. Code § 17200.

232.    Defendants' actions, as alleged above, have proximately caused injury to Plaintiff by diverting advertisement sales from Plaintiff to Defendants and inhibiting Plaintiff from effectively competing in the relevant markets.

233.    As a result, Plaintiff has suffered damages to its business or property by Defendants in an amount to be at trial in excess of $3.5 billion dollars, exclusive of costs and interest.

234.    Plaintiff is entitled to an award of damages, including an amount up to three times the amount found as actual damages, reasonable attorneys' fees under Cal. Bus. & Prof. Code, Section 17203.

## COUNT VI

## UNLAWFUL BUSINESS PRACTICES

**(AGAINST ALL DEFENDANTS.)**

235.    The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

236.    This cause of action is asserted against Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, YouTube, LLC.

237.    Since on, or around 2008 and up to the present, the Defendants, knowingly, intentionally and unlawfully, aided and abetted, and conspired with each other, to devise, or intended to engage in unlawful business practices, by which they were to illegally obtain advertisement revenue, acquire and maintain control of the on-line advertisement industry, and specifically through use of the Google AdSense (PPC) program, and to later illegally keep those assets for their own pecuniary benefit and interest.

238.    From 2008 to 2018, as set forth above, Alphabet, Inc. reported $680,246,000,000.00 in gross income derived from its Google, AdSense (PPC) program. Alphabet, Inc., has seven hundred and four (704) Million shares outstanding. Alphabet, Inc. repurchased 1.51 million shares or 0.21 % in II. Quarter of 2018. Alphabet Inc. does not pay out common stock dividend. In the trailing twelve-month period Alphabet Inc. earned $59.56 cash per share, on a free-cash flow basis 257.16 % of net earning per share. Book value grew by 0.95 % sequentially to $230.20 per share, 83.7% of net income per share in trailing twelve-month period were contributed to shareholder value. Tangible Book value grew to $ 200.99 per share from $ 198.73.

239.    Defendants' actions, as alleged above, have proximately caused injury to Plaintiff by diverting advertisement sales from Plaintiff to Defendants and inhibiting Plaintiff from effectively competing in the relevant markets. As a result, Plaintiff has suffered damages to its business or property by Defendants in an amount to be at trial in excess of $75,000.00 dollars, exclusive of costs and interest.

240.    Plaintiff is entitled to an award of damages, including an amount up to three times the amount found as actual damages, reasonable attorneys' fees under Cal. Bus. & Prof. Code, Section 17203.

**67**

## COUNT VII

### BREACH OF CONTRACT

**(AGAINST DEFENDANT ALPHABET, dba, GOOGLE, LLC., dba, BLOGGER, dba, YOUTUBE, LLC.)**

241.    The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

242.    This cause of action is asserted against Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, YouTube, LLC.

243.    Alphabet, Inc., conducts in California, directly and the United States through its business contracts and transactions with advertisement customers; website owners; and YouTube Content Creators and other the other Defendants, through the business of on-line advertisements.

244.    Defendant Alphabet and Plaintiff entered into an implied or express contract(s) whereby Plaintiff, created two YouTube Channels and Multiple Blog Sites, whereas Defendant would serve Adsense, (PPC) advertisements on said channels and blog sites, thereby providing Plaintiff with Ad revenue.

245.    The Defendants, knowingly and intentionally, through deceitful means, avoided complying with their contractual obligation of paying earned advertisement revenue to Plaintiff for the hosting of Google, AdSense (PPC) Advertisement on sites owned by Plaintiff.

246.    Plaintiff is entitled to an award of damages, according to proof at trial, including an amount up to three times the amount found as actual damages, reasonable attorneys' fees under Cal. Bus. & Prof. Code, Section 17203.

247.    In addition, Plaintiffs' damages are ongoing and increasing due to Defendants' contractual obligations to provide compensation for the claims identified herein.

### COUNT VIII

### CONVERSION

**(AGAINST DEFENDANT ALPHABET, dba, GOOGLE, LLC., dba, BLOGGER, dba, YOUTUBE, LLC.)**

248.    The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

249.    This cause of action is asserted against Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, YouTube, LLC.

250.    The Defendants, unlawfully, knowingly, intentionally and willingly engaged in fraud and deceit as defined by California Civil Code § 1709- 1710.

251.    The Defendants, knowingly, intentionally and unlawfully, failed to pay the Plaintiff the advertising revenue earned through the AdSense (PPC) program. Instead, the Defendants embezzled such funds for their own pecuniary benefit.

252.    The Defendants conspired to, and did, engage in conduct designed to deceive Plaintiff and take his money and property under false pretenses and through improper, inequitable and illegal means.

253.    As proximate cause of the Defendants' **conduct**, the Plaintiff has been injured in his property inasmuch as he has been object of fraud by the Google, AdSense (PPC); and the confiscation of advertisement revenue earned through the Google, AdSense (PPC) by the Defendants.

254.    As a result of the mentioned conspiracy and illegal conduct, the Defendants wrongfully obtained money belonging to the Plaintiff and were thereby unjustly enriched at the latter's expense.

255.    The Defendants are jointly and severally responsible and liable for disgorging all money that they wrongfully obtained through their illegal conduct, and for restoring such money to the Plaintiff, plus pre-judgment and post-judgment interest.

256.    The injuries suffered by the Plaintiff since 2008, and up to 2018, is reasonably estimated in the amount of $3,500,000,000.00.

257.    Plaintiff is entitled to an award of damages, including an amount up to three times the amount found as actual damages, reasonable attorneys' fees under Cal. Civil. Code, Section 1572.

**COUNT IX**

## FRAUDULENT MISREPRESENTATION

## (AGAINST DEFENDANT ALPHABET, dba, GOOGLE, LLC., dba, BLOGGER, dba, YOUTUBE, LLC.)

258.    The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

259.    This cause of action is asserted against Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, YouTube, LLC.

260.    From on or about October 15, 2008, and up to the present time, the Defendants herein, at the same or different points in time, unlawfully, knowingly, willfully and intentionally engaged in fraud and misrepresentation as defined by California Civil Code § 1572.

261.    The Defendants, conjured and designed these fraudulent misrepresentations, with scienter and deliberate intent to fraudulently induce Plaintiff into entering into a contract to construct on-line sites designed for the sale of Defendants' videos, music, movies and advertisements, by representing that YouTube was an alternative to major media outlets.

262.    Alphabet's assertions and representations of facts were not true, Alphabet did not believe her assertions and representations to be true, and Alphabet made such representations recklessly and without regard for the truth.

263.    Defendant Alphabet intentionally suppressed from Plaintiff the true facts that they were agents for major media outlets, involved in multiple business contracts valued in the multi-billions of dollars. The misrepresentations were falsely made by Defendants to hide this unlawful scheme. Further, Alphabet intentionally suppressed from Plaintiff the true facts that the payment of advertisement PPC fees were less than the amount of $0.25, per click.

264.    Alphabet made promises to Plaintiff of his ability to earn ad revenue for the placement of ads on his websites, which they had no intention of paying. To the contrary, Alphabet intended to keep Plaintiffs' funds for their own personal use.

265.    All of Alphabet's acts, representations and communications with Plaintiff in regards to the payment of Ad revenue identified herein were knowingly false and made with the

intent that Plaintiff rely on their false representations in order to deceive Plaintiff so that Alphabet could unlawfully misappropriate Plaintiffs' funds for their own personal use.

266.    Plaintiff has been damaged in an amount to be proven at trial as a result of fraudulent and deceitful actions in misappropriating the revenue funds.

## COUNT X

## BREACH OF CONVENANT & GOOD FAITH

## (AGAINST DEFENDANT ALPHABET, dba, GOOGLE, LLC., dba, BLOGGER, dba, YOUTUBE, LLC.)

267.    The preceding paragraphs are hereby incorporated herein as though fully set forth and are made a part of this paragraph.

268.    This cause of action is asserted against Defendant Alphabet, dba, Google, LLC., dba, Blogger, dba, YouTube, LLC.

269.    California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California.

270.    As a result of the actions of defendants, and each of them, set forth herein above, said defendant have violated the implied covenant of good faith and fair dealing contained in the contract as against said Plaintiff herein, and as a result thereof, Plaintiff is entitled to damages as prayed.

271.    The actions of said defendant as herein before described in violation of said implied covenant of good faith and fair dealing have caused the Plaintiff to suffer damages in in the amount, according to proof at trial.

## PRAYER FOR RELIEF

THEREFORE, the Plaintiff demands that Judgment be entered in his favor and the Class Members they represent, and against the Defendants: ordering the Defendants, to pay to the Plaintiff a percentage of and threefold the monies they have collected through the AdSense (PPC) program, which up to the year 2018 yield the amount of THREE BILLION FIVE HUNDRED MILLION DOLLARS ($3,500,000,000.00) (trebled); granting him pre-judgment and post-judgment interests; awarding him a reasonable amount for attorneys' fees, plus the costs

**71**

of this action; As to all Defendants, an award of punitive damages, in an amount to be determined at trial; and, granting such other further relief that under the circumstances may seem appropriate to this Honorable Court.

      **RESPECTFULLY SUBMITTED**. In Redding, California, this 6th day of November, 2018.

By:_____
             Harry J. Williby
             Petitioner, In Pro Se
             P.O. Box 990755
             Redding, CA 96099

**72**

## VERIFICATION

I, Harry J. Williby, am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Redding, California.

**Dated:** November 6, 2018

Respectfully submitted,

By: _Harry J. Williby_

Harry J. Williby
Petitioner, In Pro Se
P.O. Box 990755
Redding, CA 96099

**73**

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 6ᵗʰ day of November, 2018, I delivered by U.S. [and electronic][57] mail the following document(s):

    Notice of Lawsuit; and Request To Waive Service of Summons; and
    First Amended Verified Complaint;

**to the following Person(s)**:

Kent Walker, Esq.
VP & General Counsel, Google, LLC.
1600 Amphitheatre Parkway
Mountain View, California 94043
**Email:** kentwalker@google.com

Paramount Studio
5555 Melrose Avenue
Hollywood, California 90038
**Email:** http://www.paramountstudios.com/contact.html

Apple, Ltd.
27 Ovington Square London, SW3 1LJ
London, United Kingdom
**Email:** post@applecorpsltd.com

Sony Corporation of America
25 Madison Avenue,
New York City, NY, 10010-3683
**Email:** https://www.sony.com/en_us/SCA/contacts/overview.html

Hearst Corp.
300 W. 57th Street
New York, NY 10019.
**Email:** RSitwala@hearst.com

Walt Disney Studios
500 S. Buena Vista St.
Burbank, California 91521-9722.
**Email:** https://www.thewaltdisneycompany.com/contact-us/

Tele München Fernseh GmbH +

---

[57] Defendants have failed and/or refused to provide Plaintiff the names, or addresses of their respective coounsel. This was after repeated attempts by counsel to procure the identification of Defendants counsel. The **2018 California Rules of Court Rule 1.21. Service. Service on a party or attorney [holds]:** "Whenever a document is required to be served on a party, the service must be made on the party's attorney if the party is represented." Thus service was made upon each Defendant by electronic mail.

**74**

Co. Produktionsgesellschaft
Kaufingerstr. 24
80331 Munich, Germany
**Email:** media-relations@tmg.de
**E-Mail:** info@tmg.de
Telephone: +49 89 290 93-0

Icon Film Distribution Pty. Ltd.
808 Wilshire Blvd.
Santa Monica, California, 90401
**E-Mail:** https://www.iconmovies.com.au/contact.aspx

Fintage House, dba, Lasso Group
9100 Wilshire Blvd.
Beverly Hills, CA, 90212
**E-Mail:** http://www.fintagehouse.com/contact/

  I declare under penalty of perjury that the foregoing is true and correct and that this

declaration was executed at Redding, California.

            Respectfully submitted,

            *Harry J. Williby*

            _____

            HARRY J. WILLIBY (Electronic Signature)
            Counsel, In Pro Se
            P.O. Box 990775
            Redding, CA 96099
            (530) 209-0530
            harrywilliby@yahoo.com



Harry J. Williby
PO Box 990755
Redding, CA 96099

Mail Date
11-07-2018

CASE No. 3:18-cv-05986-JST

OFFICE OF THE CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CALIFORNIA 94102



1000

94102

U.S. POSTAGE PAID
FCM LG ENV
REDDING, CA
96007
NOV 07, 18
AMOUNT
$3.52
R2305M144190-04